FIRST UNITED METHODIST CHURCH OF SYRACUSE; and First Gospel Church f/k/a Church Wesleyan Methodist, Plaintiffs,

v.

CITY OF SYRACUSE; Robert Z. Srogi, As Commissioner of Assessment and Taxation of the City of Syracuse, New York; Board of Assessment for the City of Syracuse, New York; and F. L. Canino, As Commissioner of Finance of the City of Syracuse, New York, Defendants.

No. 79–CV–202.

United States District Court, N. D. New York.

May 5, 1980.

Richard K. Hughes, Hiscock, Lee, Rogers, Henley & Barclay, Syracuse, N. Y., Lee Boothby, Johns, Carson & Boothby, Washington, D. C., for plaintiffs.

James L. Gelormini, Asst. Corp. Counsel, Syracuse, N. Y., for defendants.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

The City of Syracuse has levied a special assessment (tax) against several churches owning places of worship within the central business district. After being notified that their property would be subject to a tax sale if the assessments remained unpaid, the churches commenced this action challenging the constitutionality of the city's special assessment provisions and seeking preliminary and permanent injunctive relief to enjoin the enforcement of these ordinances.

Shortly after the action was commenced, the City interposed a motion to dismiss and consented to the entry of an order preliminarily restraining further enforcement proceedings. The motion to dismiss asserts that the plaintiffs' action is barred by the Tax Injunction Act. 28 U.S.C. § 1341. However, before addressing the issues raised by this defense, a brief review of the underlying facts will place the controversy in its proper perspective.

To begin with, each of the plaintiffs is a religious corporation organized under New York law, and each owns church property located within the City's "special assessment" district. The special assessment district encompasses the central business area and was created by the Syracuse Common Council in 1975 to stimulate economic revitalization of the inner city. The ordinances establishing it require each parcel of real estate within the district to contribute (by assessment), its fair share of the expenses incurred in providing the following unique services:

Construction and installation of landscaping, planting and park areas; construction of lighting and heating facilities; construction and operation of facilities such as: places of amusement and entertainment, bus stop shelters, decorative lighting, benches and street furniture, sculptures, paintings, murals, and other works of art, booths, signs, news and music facilities, fire hydrants, kiosks, receptacles, canopies, pedestrian shelters, display cases, fountains, public rest rooms, booths for retail sales, information booths, exhibits, and such other fixtures, equipment facilities and appurtenances which might enhance the movement, safety, convenience, and enjoyment of the public and be of economic benefit to surrounding properties; construction of pedestrian overpasses and underpasses and connections between buildings; closing or opening, widening or narrowing of existing streets; condemnation of existing structures where necessary in order to carry out special district purposes; construction of ramps, sidewalks, plazas and pedestrian malls; rehabilitation or removal of existing structures as required; removal and relocation of utilities and vaults as required; provision for additional maintenance and/or police personnel as required for the enjoyment and protection of the public; granting of permits to newsstands, restaurants, entertainment facilities and other desirable private uses; providing and coordinating parking lot and parking garage facilities with the special district in order to secure maximum availability of public parking; and such other powers as may be necessary to carry out the improvement, maintenance and operation of the special district. Chpt. 38, § 2(1) Revised General Ordinance of the City of Syracuse To Establish a Special Assessment District.

Since 1976, places of worship owned by the plaintiffs have been subject to the special assessment necessary to construct and maintain these improvements. The plaintiffs, however, deny that they receive any benefit from these services and they protest that, prior to creation of the Special Assessment District, their property had always been exempt from taxation by virtue of its religious use. As a result, the plaintiffs contend that the City has, in this instance, violated the first and fourteenth amendments to the United States Constitution by refusing to recognize their religious use exemptions.

■ Consideration of the City's motion to dismiss must, of course, begin with the Tax Injunction Act, 28 U.S.C. § 1341:

The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

This statute codifies principles of equity practice and federalism by recognizing each state's need to administer its own fiscal economy and administration. *Tully v. Griffin*, 429 U.S. 68, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976). It applies equally to actions for declaratory or injunctive relief, *Houston v. Standard-Triumph Motor Co.*, 347 F.2d 194, 198 (5th Cir. 1965); *Helmsley v. City of Detroit*, 320 F.2d 476, 478 (6th Cir. 1963), and cannot be avoided by invoking 42 U.S.C. § 1983—a provision which does not require prior exhaustion of administrative remedies. *American Commuters Association v. Levitt*, 405 F.2d 1148, 1151 (2d Cir. 1969). It is therefore clear that a federal district court must refrain from interrupting state tax assessment[1] or enforcement proceedings unless important constitutional rights may otherwise be lost. *See Hillsborough v. Cromwell*, 326 U.S. 620, 622–23, 66 S.Ct. 445, 447–48, 90 L.Ed. 358 (1946).

■ The controlling issue in most cases involving the Tax Injunction Act is whether a "plain, speedy and efficient" remedy exists in the state courts. This case is no exception.

---

1. The argument has not been made, nor could it be, that 28 U.S.C. § 1341 is inapplicable because the Syracuse "special assessment" is not a "tax". *See Tramel v. Schrader*, 505 F.2d 1310, 1314–1316 (5th Cir. 1975)—special assessment for street improvements is a "tax" within the meaning of § 1341; 17 *Wright & Miller*, Fed.Prac. & Proc. § 4237 p. 418.

The prerequisite of a "plain" remedy has not been construed to mean a "perfect" one; indeed, § 1341 will require federal abstention even if the state remedy is neither equal to nor better than the remedy available in the federal courts. *Mandel v. Hutchinson*, 494 F.2d 364, 367 (9th Cir. 1974); *Bland v. McHann*, 463 F.2d 21, 29 (5th Cir.) *cert. denied* 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973). The remedy must, however, be reasonably "certain" before the Tax Injunction Act may be invoked. *Spector Motor Service, Inc. v. O'Connor*, 340 U.S. 602, 605, 71 S.Ct. 508, 510, 95 L.Ed. 573 (1951); *Garrett v. Bamford*, 538 F.2d 63, 67 (3d Cir. 1976). Consideration of Section 1341 and its applicability in this case must therefore begin with an examination of the potentially available New York remedies.

Article IV of the New York Real Property Tax Law confers tax exempt status upon real estate owned by an association organized exclusively for religious purposes. The constitutionality of these provisions has been upheld. *Walz v. Tax Commission of City of New York*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970).

Resort to Article VII of the New York Real Property Tax Law is the usual remedy for an erroneous assessment. However, when a New York tax assessor incorrectly refuses to grant tax exempt status to a religious organization, the resulting tax is a nullity, i. e., the assessment is jurisdictionally defective, and it may be challenged through a declaratory judgment action (*Dun & Bradstreet, Inc. v. City of New York*, 276 N.Y. 198, 11 N.E.2d 728 (1937); *Buffalo Hebrew Christian Mission, Inc. v. City of Syracuse*, 33 A.D.2d 152, 306 N.Y. S.2d 963 (4th Dep't 1969)), an action in equity (*Elmhurst Fire Co. v. City of New York*, 213 N.Y. 87, 91, 106 N.E. 920 (1914), or an Article 78 proceeding (*State Insurance Fund v. Boyland*, 282 App.Div. 516, 125 N.Y.S.2d 169, *aff'd* 309 N.Y. 1009, 133 N.E.2d 457 (1956). See generally, Lee & LeForestier, *Review & Reduction of Real Property Assessment* 2d Ed. § 10.09. Thus, even if the plaintiffs were unable to proceed under Article VII of the New York Real Property Tax Law, either because the provisions of § 702 could no longer be satisfied, or because payment could not be made (R.P.T.L. § 726), the defendants' refusal to exempt the property could still be reviewed through an Article 78 proceeding, a declaratory judgment action, or a proceeding in equity. In fact, the New York courts have consistently held that constitutional challenges may be raised through these procedures, despite provisions in its tax laws stating that review of an administrative determination shall be a taxpayer's only remedy. *Tully v. Griffin, Inc.*, 429 U.S. 68, 75, 97 S.Ct. 219, 223, 50 L.Ed.2d 227 (1976), *citing Slater v. Gallman*, 38 N.Y.2d 1, 4, 377 N.Y.S.2d 448, 339 N.E.2d 863 (1975); *In re First National City Bank v. City of New York Finance Administration*, 36 N.Y.2d 87, 92–93, 365 N.Y.S.2d 493, 324 N.E.2d 861 (1975); *Richfield Oil Corp. v. City of Syracuse*, 287 N.Y. 234, 239, 39 N.E.2d 219 (1942). And preliminary injunctive relief is certainly available to forestall enforcement of the contested liability pending a final adjudication by the state courts. *Tully v. Griffin, Inc.*, 429 U.S. at 76, 97 S.Ct. at 224. I am therefore satisfied that, since the plaintiffs have an adequate remedy in the New York courts, the United States District Court is without jurisdiction to entertain this action. *Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 470, 96 S.Ct. 1634, 1639, 48 L.Ed.2d 96 (1976); *Hickmann v. Wujick*, 488 F.2d 875, 876 (2d Cir. 1973).

Accordingly, on April 1, 1980, the complaint shall be dismissed and this court's earlier order shall be vacated.

It is so ordered.