**423 SOUTH SALINA STREET, INC., Plaintiff,**

v.

**CITY OF SYRACUSE, a Municipal Corporation; Robert Z. Srogi, Individually and as Commissioner of Assessment of the City of Syracuse; Frank L. Canino, Individually and as Commissioner of Finance of the City of Syracuse; Lee Alexander, Individually and as Mayor of the City of Syracuse; and Jacob Benderson, Individually and as Chairman, Assessment Board of Review of the City of Syracuse, Defendants.**

No. 82–CV–319.

United States District Court,
N.D. New York.

May 6, 1983.

Mousaw, Vigdor, Reeves, Heilbronner & Kroll, Rochester, N.Y., for plaintiff; Ruth Kennedy-Daise, James S. Grossman, Rochester, N.Y., of counsel.

David Garber, Corp. Counsel for the City of Syracuse, Anthony S. Bottar, Syracuse, N.Y., Jacob Benderson, Syracuse, for defendants; Eric S. Benderson, Syracuse, N.Y., of counsel.

### MEMORANDUM–DECISION AND ORDER

MUNSON, Chief Judge.

Plaintiff, the former owner of real property located in downtown Syracuse, New York, has brought this action for damages against the City of Syracuse and some of its major officials. According to plaintiff's complaint, defendants have been engaged in a longstanding conspiracy to deliberately overassess real property in the downtown area. In furtherance of this conspiracy, plaintiff alleges, defendants overassessed plaintiff's property and then purposefully delayed any and all efforts by plaintiffs to have the overassessment corrected in the state court system. Plaintiff's property was subsequently seized by the City for failure on the part of plaintiffs to pay their tax bills. A tax sale was conducted by the City and the City "bought" the property for the amount of unpaid taxes plus interest.

This action was brought by plaintiff under 42 U.S.C. § 1983 (Supp. IV 1980) to remedy what it perceived as a deprivation of its property without due process of law, without just compensation, and without equal protection of the laws. In addition, plaintiff alleges that the conspiratorial conduct of defendants violated 42 U.S.C. § 1985(3) (Supp. IV 1980), and that the failure of defendants to prevent such conspiracy when each defendant had the power to do so violated 42 U.S.C. § 1986 (Supp. V 1981). Jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343(3) (1976 & Supp. V 1981).

Presently before the Court is defendants' motion to dismiss the complaint pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants assert that plaintiff has failed to state a claim upon which relief can be granted. In addition, defendants argue that the Tax Injunction Act, 28 U.S.C. § 1341 (1976), and principles of comity preclude this Court from entertaining plaintiff's action for damages. Defendant Benderson has also moved to dismiss the complaint on his own motion. Benderson moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, moves for summary judgment pursuant to Fed.R. Civ.P. 56.

As noted by the courts of the State of New York, the City of Syracuse has been a "hotbed of tax litigation." *W.T. Grant Co. v. Srogi*, 52 N.Y.2d 496, 506, 420 N.E.2d 953, 956, 438 N.Y.S.2d 761, 764 (1981). The real property that is the subject of this litigation has already been subject to various real estate assessment review proceedings and the instant case appears to be an attempt to turn much of the attendant frustration from those proceedings into an award of damages. In order to place this proceeding in its proper perspective, the Court finds that a review of the state court proceedings is in order.

## I

The property involved herein is located in the easterly half of the 400 block of South Salina Street, and is found in Block Number 116 of the Onondaga County Clerk's Index of Blocks. Originally owned by the University of Rochester, the property was leased to the W.T. Grant Company in 1944. The lease to Grants was for a term of 30 years, later extended to 1982 with an option to renew until 2043. Pursuant to the terms of the lease, Grants was required to pay annual rental charges in the amount of $77,322.32, plus all taxes, utilities and building maintenance expenses. The Grant tenancy ended in 1976 when Grants went bankrupt.

Following the Grant bankruptcy in 1976, the building was sold by the University of Rochester to plaintiff 423 South Salina Street, Inc. Plaintiff purchased the property for $25,000.00 and took it subject to the unpaid taxes for the year 1976. Accordingly, when one considers the total amount of taxes due together with interest and penalties, the full consideration given to the University of Rochester totaled $175,774.32. Plaintiff was of course free to pursue real estate assessment review procedures in an attempt to reduce the outstanding tax bills.

For the years 1964–78 inclusive, the City placed an assessed value on the property of $1,135,700.00. The City placed an assessed value on the property of $1,054,450.00 for the years 1979–80 inclusive. Having received what it considered to be outrageous real property assessments, Grants and later plaintiff instituted assessment review proceedings every year from 1964 through 1980.

Under New York law, persons challenging real property tax assessments must continue to pay their taxes during the pendency of assessment review procedures. *W.T. Grant Co. v. Srogi*, 52 N.Y.2d at 516–17, 420 N.E.2d at 962, 438 N.Y.S.2d at 770. *See also First United Methodist Church of Syracuse v. City of Syracuse*, 489 F.Supp. 185, 188 (N.D.N.Y.1980). Mere institution of assessment review proceedings will not serve to stay either the collection of real property taxes or enforcement procedures by the taxing authority. *W.T. Grant Co. v. Srogi, id.* (citing N.Y. Real Prop. Tax Law § 704(3) (McKinney 1972); *People ex rel. Manhattan Ry. Co. v. Coleman*, 48 Hun. 602, 1 N.Y.S.2d 112; *People ex rel. New York El. Ry. Co. v. Coleman*, 48 Hun. 620, 1 N.Y.S.2d 551). While taxpayers who ultimately succeed in having their assessments reduced are given refunds of the amounts overpaid, this is small consolation considering the fact that the City need only pay 3% interest on the overpayments. N.Y.Gen. Mun.Law § 3–a(1) (McKinney 1977 & Supp. 1982–83).[1]

---

**1.** The New York Legislature has recently amended Section 3–a(1) of the General Municipal Law by providing for an increase in the interest rate payable by municipal corporations. This new rate of 9% goes into effect on the first day of the fiscal year following the

As noted above, the City continually assessed the Grant property at $1,135,700.00. In December of 1972, Grants obtained a judgment against the City for $276,400.19 representing overassessments for the years 1964 through 1970. The City did not pay the judgment, but rather instituted an appeal to the Appellate Division.[2] By following this course, the City was able to take advantage of a statutory stay pending appeal. N.Y.Civ.Prac.Law § 5519(a)(1) (McKinney 1978). Despite the fact that the trial court found the proper assessments to be in the range of $632,100.00 to $742,000.00, the City continued to assess the property at the old rate of $1,135,700.00 for the years after 1970.

The next round of assessments to receive judicial review were those for the tax years 1971 through 1976. These proceedings were tried to the Honorable Henry A. Hudson beginning in May of 1976. While it was anticipated that the proof in the proceedings which covered upwards of 40 parcels of property would be completed by September 1, 1976, delays caused largely by the City resulted in the proceedings running until the end of the year.

Justice Hudson rendered his decision in late February of 1978. In a judgment dated April 21, 1978, the City was ordered to refund $239,933.20 for overpayments on assessments for 1971 through 1975. Although Justice Hudson found overassessments for the tax year 1976 as well, no refund was ordered because neither Grants nor plaintiff paid any taxes during that year. The proper assessments ranged from $604,000.00 to $823,500.00 for the years 1971 through 1976. Once again, the City chose not to pay the refund and exercised its right to appeal.

During the course of the City's appeal of the 1971 through 1976 assessments, the City took a tax deed on plaintiff's property for non-payment of the 1976 taxes. The deed was recorded in the Onondaga County Clerk's Office on April 9, 1979. According to the terms of the deed, the City was the highest bidder on the property at a "tax sale" conducted on April 6, 1977. Thus, plaintiff was divested of its property as of April 9, 1979. Although Justice Hudson found that the City had overassessed the property for the tax year 1976 by over 100%, plaintiff did not pay taxes on either the full assessment of $1,135,700.00 or the reduced assessment of $604,000.00.[3]

On May 17, 1979, the Honorable Richard Aronson enjoined the City from transferring title to the property to any third party pending a final appellate decision on the assessments.[4] The Appellate Division,

enactment date of the new law. 1982 N.Y. Laws ch. 681, § 1. The enactment date of the new law was July 22, 1982. Accordingly, all payments of interest prior to the effective date of the new law will remain at the 3% level. Since plaintiff no longer has any assessment review proceedings pending, all references to interest payable will be to the older 3% rate.

2. The City and Grants entered into negotiations to settle the 1972 judgment. Pursuant to an elaborate agreement worked out between the parties, Grants agreed to remain in business during the years 1975, 1976, and 1977. In return, the City would refund $240,000.00 of the $276,400.19 figure if certain contingencies occurred with respect to the City's appeals on the overassessments. With Grants having vacated the premises in 1976 due to its bankruptcy, it appears as though the City only paid $80,000.00 of the $240,000.00 settlement agreement. It further appears that the City did not review the assessment of the property pursuant to the terms of the agreement.

3. The record is unclear whether plaintiff could have paid part of the 1976 taxes during the pendency of the City's appeal. Nevertheless, plaintiff was confronted with the well-established rule in New York that one complaining of overassessments must pay the tax and then sue for a refund. W.T. Grant Co. v. Srogi, 52 N.Y.2d at 516–17, 420 N.E.2d at 962, 438 N.Y. S.2d at 770. It is undisputed that plaintiff never paid any real property taxes with respect to its property. Thus, plaintiff paid $25,000.00 for the property in the hopes of receiving a favorable decision on the claim of overassessment. If such a decision was rendered, and, of course, upheld on appeal, then plaintiff would have paid the assessment. In this manner, plaintiff's speculation would have resulted in acquisition of the property at a "bargain price."

4. Justice Aronson's injunction prohibited transfer until the pending assessment review proceedings for the years 1971 through 1976 had been completed. It should also be noted that the injunction covered a pending assessment review proceeding for the years 1977 through

Fourth Department, affirmed Justice Hudson's decision on the assessments and further reduced the total assessed values to the point where the refund due was $353,-734.81; plus interest and costs, for the years 1971 through 1976. In addition, the Appellate Division affirmed Justice Aronson's grant of the injunction, finding that

> [w]e do not suggest that injunctive relief is available in ordinary tax review proceedings or even in unusual ones. We do hold, however, that this taxpayer has demonstrated a long and aggravated pattern of conduct by the City from which the taxpayer cannot reasonably protect itself or its property without injunctive relief.

*W.T. Grant Co. v. Srogi,* 71 A.D.2d 457, 475, 423 N.Y.S.2d 324, 336 (4th Dep't 1979), *rev'd,* 52 N.Y.2d 496, 420 N.E.2d 953, 438 N.Y.S.2d 761 (1981).

On April 9, 1981, the New York Court of Appeals affirmed the Appellate Division's determination on the 1971 through 1976 assessments and entered final judgment in the amount of $353,734.81, plus interest and costs. With regard to the tax year 1976, the correct figure for assessed value was $380,000.00 with the correct figure for tax due being $42,997.00. Thus, the City had sought to collect $85,507.46 more in taxes from plaintiff than was finally determined to be due and owing.

With regard to the injunction, the Court of Appeals reversed. Although the Court found that the City's conduct had been outrageous, plaintiff was not entitled to an injunction because it lacked equitable standing.

> The facts in the present case are quite compelling. As noted by the Appellate Division, taxpayers have been paying excessive taxes on the Grant property for over 12 years despite court rulings that the assessments were unlawful by reason of overvaluation. Substantial refunds were ordered on two occasions, but the city to date has repaid only a small portion of the taxes it has unlawfully collected. Such an aggravated pattern of mis-

use of the taxing power might have been sufficient to justify restraining the city from transferring title to the Grant property pending the final determination of the assessment proceedings. Nevertheless, the simple fact of the matter is that the party who obtained the injunction [423] South Salina Street, Inc., was not the one subjected to this unlawful conduct.

*W.T. Grant Co. v. Srogi,* 52 N.Y.2d at 518–19, 420 N.E.2d at 963, 438 N.Y.S.2d at 771–72. The Court of Appeals went on to observe that plaintiff

> purchased the property at the low price of $25,000 with the understanding that it would assume all tax liability then owing. These taxes were never paid, nor did [423] South Salina Street, Inc., pay taxes on the property for the next three years. Under these circumstances, while Grant may have been entitled to an injunction against the city, [423] South Salina Street, Inc., lacks equitable standing to assert the aggravated pattern of tax abuse to which its predecessor in interest was subject as the basis for injunctive relief. Therefore, we conclude that it was error to issue the injunction in this case.

*Id.* at 519, 420 N.E.2d at 964–64, 438 N.Y.S.2d at 772. Thus, it was just a case of the wrong plaintiff at the right time.

## II

Defendants have raised the spectre of the Tax Injunction Act and principles of comity as a complete bar to this Court's jurisdiction. The Tax Injunction Act provides that:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. This legislation, according to the Supreme Court, "reflect[s] the fundamental principle of comity between

1979. This later proceeding was ultimately dismissed in 1981 for failure to prosecute.

federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation." *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 103, 102 S.Ct. 177, 179, 70 L.Ed.2d 271 (1981).

## A

Even before the enactment of the Tax Injunction Act, the Supreme Court followed a policy of equitable restraint when dealing with state tax questions. This policy is best observed in *Matthews v. Rodgers,* 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932), where the Court reversed a grant of an injunction against the collection of a state tax. In *Matthews,* a three-judge district court enjoined the collection of a Mississippi tax on persons in the cotton industry. The Court found the injunction to be beyond the equitable powers of the district court. Since there was a "plain, adequate and complete" remedy in the state court system, *id.* at 526, 52 S.Ct. at 220, federal equity jurisdiction was lacking. The *Matthews* Court explained that

> [t]he scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it.

*Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. at 108, 102 S.Ct. at 182 (citing *Matthews v. Rodgers,* 284 U.S. at 525, 52 S.Ct. at 219).

Following passage of the Tax Injunction Act in 1937,[5] the Supreme Court continued to recognize the comity principles at work in *Matthews v. Rodgers.* In *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), plaintiffs sought a declaratory judgment that certain provisions in the Louisiana unemployment insurance tax laws were unconstitutional as applied to them. Relying on *Matthews v. Rodgers,* the Court in *Great* *Lakes* refused to allow the entry of such a declaratory judgment due to considerations of federalism and comity. "[W]e are of the opinion that those considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure." *Id.* 319 U.S. at 301, 63 S.Ct. at 1074.

## B

In *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* the Supreme Court was presented with a conflict between the above-mentioned principles of restraint and the broad remedial principle of 42 U.S.C. § 1983. While the Tax Injunction Act was a direct restraint on federal court jurisdiction, 42 U.S.C. § 1983 expressed the Congressional intent that there be immediate availability of a federal forum for persons whose constitutional or federal rights had been abridged by any state. To resolve this conflict, the Court turned to the facts of the *Fair Assessment* case and compared them with the policies underlying each of the statutes.

Petitioners in *Fair Assessment* were landowners and a nonprofit corporation formed by taxpayers to promote equitable real property assessments in St. Louis County and throughout the State of Missouri. According to their complaint, St. Louis County officials assessed properties with new improvements at 33.3% of their current market value while assessing similar properties without new improvements at 22% of current market value. 454 U.S. at 106, 102 S.Ct. at 181. In addition, petitioners claimed that property owners who successfully appeal their real property tax assessments are targeted for reassessment the following year. *Id.* Although petitioner Cassilly, the landowner, sought limited relief in the Missouri State court system, his efforts proved unsuccessful. Accordingly, he filed suit in the federal district court seeking actual damages in the amount of

5. Act of August 21, 1937, 50 Stat. 738.

overassessments as well as punitive damages from each of the defendant real property tax officials. Petitioner Fair Assessment in Real Estate Ass'n, Inc. sought damages in the amount of expenses incurred in promoting its cause.

■ The Court found that resort to the Tax Injunction Act was not required. According to the majority, principles of comity bar the award of damages in a federal court under 42 U.S.C. § 1983 for the alleged unconstitutional administration of state tax systems. Where state remedies are "plain, adequate and complete,"[6] the door to the federal courts will be closed to the state taxpayer. 454 U.S. at 116, 102 S.Ct. at 186. Of particular import to the instant case is the following passage.

> Petitioners will not recover damages under [42 U.S.C.] § 1983 unless a district court first determines that respondents' administration of the county tax system violated petitioners' constitutional rights. In effect, the district court must first enter a declaratory judgment like that barred in *Great Lakes.* We are convinced that such a determination would be fully as intrusive as equitable actions that are barred by principles of comity [footnote omitted]. Moreover, the intrusiveness of such [42 U.S.C.] § 1983 actions would be exacerbated by the nonexhaustion doctrine of *Monroe v. Pape,* 365 U.S. 167 [81 S.Ct. 473, 5 L.Ed.2d 492] (1961). Taxpayers such as petitioners would be able to invoke federal judgments without first permitting the State to rectify any alleged impropriety.

*Id.* at 113–14, 102 S.Ct. at 184–85. Therefore, the Court must determine whether plaintiff may protect its federal rights by resort to "plain, adequate and complete" state procedures. If such a state remedy is available, then plaintiff's complaint must be dismissed on the grounds of comity.[7]

### III

Plaintiff seeks to avoid the harshness of the rule expressed in *Fair Assessment* by advancing the position that this Court need not make a determination or judgment about the constitutionality of defendants' conduct. According to plaintiff, the New York Court of Appeals has explicitly held that defendants abused their taxing authority and that this finding is binding on this Court by virtue of 28 U.S.C. § 1738 (1976). On the other hand, defendants seek to make the identical argument by asserting that the New York Court of Appeals has explicitly held that plaintiff was not the victim of defendants' unlawful conduct.

■ The principles of res judicata (claim preclusion) and collateral estoppel (issue preclusion) are fully applicable to actions brought under the federal civil rights statutes. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Gargiul v. Tompkins,* 704 F.2d 661, 665 (2d Cir.1983). Res judicata serves to bar relitigation of issues actually raised and decided as well as those issues that could have been, but were not, raised and decided in that action. *Gargiul v. Tompkins,* 704 F.2d at 665. There must have been, of course, a final judgment on the merits for res judicata to apply. As to the invocation of collateral estoppel,

---

**6.** In footnote 8, 454 U.S. at 116, 102 S.Ct. at 186, the Court observed that the phrase "plain, adequate and complete" found in the *Matthews* and *Great Lakes* decisions should be given the same meaning as the phrase "plain, speedy and efficient" found in the Tax Injunction Act. For a determination as to the effectiveness of state remedies, the federal court must, of course, look to the applicable state law.

**7.** This result is also consistent with the past law in this Circuit. For example, in *Evangelical Catholic Communion, Inc. v. Thomas,* 373 F.Supp. 1342 (D.Vt.1973), aff'd *without opinion,* 493 F.2d 1397 (2d Cir.1974), the district

court dismissed a similar action for damages, finding that a prerequisite for the award of damages would be the declaration that plaintiff's rights had been violated. 373 F.Supp. at 1344. While *Evangelical Catholic Communion, Inc. v. Thomas* was decided on the basis of the Tax Injunction Act, it was cited with approval in *Fair Assessment,* 454 U.S. at 113–14 n. 7, 102 S.Ct. at 184–85 n. 7. *See also Wells v. Malloy,* 510 F.2d 74 (2d Cir.1975); *Hickmann v. Wujick,* 488 F.2d 875 (2d Cir.1973); *American Commuters Ass'n, Inc. v. Levitt,* 405 F.2d 1148 (2d Cir.1969).

issues that have already been litigated and determined adversely to a party in a prior action may not be relitigated where such adverse determination was necessary to the judgment in the action. *Id.*

In the present case, the parties seek to invoke res judicata and/or collateral estoppel with respect to two specific findings by the New York Court of Appeals: (1) that defendants abused their taxing power with respect to real property assessments on plaintiff's property for the years 1964–76; and (2) that plaintiff was not the one subjected to defendants' unlawful conduct. *W.T. Grant Co. v. Srogi,* 52 N.Y.2d at 518–19, 420 N.E.2d at 963, 438 N.Y.S.2d at 771–72. Clearly, each party seeks to preclude the other from relitigating only that issue which helps his respective case.

■ The Court of Appeals restricted its ruling to the propriety of the 1971–76 assessments. No finding was made on the then-pending 1977–79 assessments. Thus, there has been no court determination, either state or federal, about the propriety of the real property assessments during the time when plaintiff had an interest in the property. Accordingly, res judicata or collateral estoppel would not aid plaintiff or defendant in the instant case.

■ As to the Court of Appeals' finding that plaintiff was not damaged by defendants' unlawful conduct, such finding has no bearing on the instant case due to its interlocutory character. The Court of Appeals made this reference to plaintiff's equitable standing in the context of a preliminary injunction. No final decision on the question of whether plaintiff was ever injured by defendants during the time when it had an interest in the property was ever entered. Thus, as with the ruling on the assessments, res judicata and collateral estoppel do not serve to bar relitigation in the instant case. Therefore, the Court is faced with the identical situation presented in the *Fair Assessment* case: a taxpayer's suit for damages under 42 U.S.C. § 1983 based on the validity of a state taxing system.

Moreover, as in *Fair Assessment,* there has been no finding that plaintiff has been injured by defendants' conduct.

IV

In order to determine the adequacy of plaintiff's remedies under New York law, the Court must first turn its attention to the recent Supreme Court decision in *Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981). In *Rosewell,* the Court explained that state remedies are to be measured in a "procedural" rather than a substantive context. *Id.* at 512, 101 S.Ct. at 1228; *Lamont v. Tully,* 517 F.Supp. 462, 464 (N.D.N.Y.), *vacated on other grounds,* 92 F.R.D. 462 (N.D.N.Y. 1981). The procedures available under Illinois law in the *Rosewell* case were determined to be adequate because taxpayers were provided with a " 'full hearing and judicial determination' at which [they] may raise any and all constitutional objections to the tax." 450 U.S. at 514, 101 S.Ct. at 1229. Appellate review was available through the Illinois State court system with ultimate review in the Supreme Court available under 28 U.S.C. § 1257 (1976). Although state court review normally takes two years time after which the state refunded overpayments without interest, the Supreme Court found such procedure to be "speedy" within the meaning of the Tax Injunction Act. *Id.* at 520–21, 101 S.Ct. at 1232–33.

Under New York law, the normal method for challenging the validity of real property assessments is through the procedures in Article 7 of the Real Property Tax Law. N.Y. Real Prop. Tax Law, Art. 7 (McKinney 1972 & Supp. 1982–83); *First United Methodist Church of Syracuse v. City of Syracuse,* 489 F.Supp. 185, 188 (N.D.N.Y.1980). The facts of the present case suggest, however, that this procedure is neither "plain, adequate and complete" within the meaning of the *Matthews, Great Lakes,* or *Fair Assessment* decisions, nor "plain, speedy and efficient" within the meaning of the Tax Injunction Act.[8] Through the use of

---

**8.** It must, of course, be remembered that plaintiff never followed through with its Article 7

New York's statutory stay provision, the City has been able to drag assessment review proceedings well beyond the so-called two year maximum time period allegedly set down by the Court in *Rosewell v. La-Salle Nat'l Bank. See Friarton Estates Corp. v. City of New York,* 681 F.2d 150, 157–58 (2d Cir.1982). Thus, the Court must determine whether other procedures available under New York law could adequately protect plaintiff's federal rights. *Fair Assessment,* 454 U.S. at 116, 102 S.Ct. at 186.

■ As the Supreme Court noted in *Fair Assessment,* 454 U.S. at 116–17, 102 S.Ct. at 186, the availability of a state forum in which to pursue an action under 42 U.S.C. § 1983 strongly supports the withholding of federal jurisdiction. Here, it is undisputed that the courts of the State of New York will entertain such civil rights actions. Moreover, as this Court observed in the *First United Methodist Church of Syracuse* case, 489 F.Supp. at 188, taxpayers complaining of unlawful or discriminatory real property tax assessments may avail themselves of New York's declaratory judgment procedure. N.Y.Civ.Prac.Law § 3001 (McKinney 1974). In addition, New York practice provides for an expedited review of official action through what has come to be known as an "Article 78 proceeding." N.Y. Civ.Prac.Law, Art. 78 (McKinney 1981 & Supp. 1982–83). *See Tully v. Griffin,* 429 U.S. 68, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976). Thus, it appears as though New York offers an entire range of proceedings in which taxpayers may challenge real property tax assessments.

In opposition plaintiff argues that these procedures all have short statutes of limitations and that dismissal of this action will result in plaintiff being left without any method of redress. However, the fact that the statute of limitations may have expired is irrelevant to the issue of whether plaintiff has an adequate state remedy. Instructive in this regard is the case of *Henry v. Metropolitan Dade County,* 329 F.2d 780 (5th Cir.1964), where the court stated that

[t]he existence of a remedy in the State court effectively ousts the federal court of jurisdiction .... The expiration of time in which the state suit might have been brought does not result in the destruction of the plain and simple remedy principle specified in the [Tax Injunction Act]. To hold otherwise would allow any disgruntled taxpayer to simply wait until the statute of limitations had run in the state courts and then bring suit in the federal court.

*Id.* at 781. *See also Town of Ball v. Rapides Parish Police Jury,* 597 F.2d 43, 45–46 (5th Cir.1979); *Aluminum Co. of Am. v. Department of Treasury of State of Michigan,* 522 F.2d 1120, 1125 (6th Cir.1975); *Bonin v. Gannon,* 494 F.Supp. 78, 81 (M.D.Pa. 1980); *Group Assisting Sewer Proposal-Ansonia v. City of Ansonia,* 448 F.Supp. 45, 47 (D.Conn.1978); *Klotz v. Consolidated Edison Co. of New York,* 386 F.Supp. 577, 587 (S.D.N.Y.1974).

■ Accordingly, this Court finds that the State of New York provides a "plain, adequate and complete" remedy for challenges to its real property tax assessments and, therefore, principles of comity require dismissal of the instant action. This result is also consistent with the mandate of the Tax Injunction Act. Although plaintiff asserts that the decision in *Staffen v. City of Rochester,* 80 A.D.2d 16, 437 N.Y.S.2d 821 (4th Dep't 1981), precludes it from filing a civil rights action in the state courts, this Court notes that *Staffen* may not be the last word on the statute of limitations for actions brought under 42 U.S.C. § 1983. Just three months after the decision in *Staffen,* the United States Court of Appeals for the Second Circuit decided *Pauk v. Board of Trustees of City Univ. of New York,* 654 F.2d 856 (2d Cir.1981).

In *Pauk,* the court made a detailed examination of the scope and effect of 42 U.S.C. § 1983 and compared this analysis to the various New York statutes of limitations. The *Pauk* court concluded that the three year statute of limitations applied to ac-

assessment review procedures. *See* note 4 *supra.* At the time of their dismissal, four years

had elapsed since the inception of the first year's review proceeding.

tions brought under 42 U.S.C. § 1983 rather than the one year and ninety day statute of limitations expressed in *Staffen.* In view of the *Pauk* decision, the courts of the State of New York, and more particularly the Fourth Department, may reconsider the *Staffen* decision. Thus, it cannot be said that plaintiff is completely foreclosed from any relief in the New York State court system.

## V

■ With regard to plaintiff's allegation of a conspiracy, the Court agrees with defendants that plaintiff has failed to meet the somewhat stringent pleading requirements of this Circuit. Plaintiff has failed to put forward any specific facts concerning the alleged conspiracy among defendants, and its complaint contains only the barest of allegations supporting such a claim. With such "vague," "conclusory" and "general" allegations of a conspiracy to deprive plaintiff of its civil rights, *Contemporary Mission, Inc. v. United States Postal Service,* 648 F.2d 97, 107 (2d Cir.1981) (citing *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977), plaintiff's complaint cannot withstand a motion to dismiss. As to plaintiff's claim under 42 U.S.C. § 1986, it follows that having proved no conspiracy under 42 U.S.C. § 1985, plaintiff cannot succeed on its claim that defendants could have prevented such conspiracy. *Powell v. Kopman,* 511 F.Supp. 700, 704 (S.D.N.Y.1981); *Slegeski v. Ilg,* 395 F.Supp. 1253, 1255–56 (D.Conn.1975).

## VI

In conclusion, the Court finds that the State of New York provides its citizens with a "plain, adequate and complete" remedy for challenging real property tax assessments. Accordingly, principles of comity as well as the Tax Injunction Act preclude the instant suit for damages in federal district court. In addition, plaintiff has failed to prove its allegations of a conspir-

acy among defendants. Finally, absent proof of a conspiracy, plaintiff may not succeed on its claim that defendants failed to prevent such conspiracy.[9] Therefore, it is

ORDERED, that defendants' motion to dismiss the complaint is hereby granted.

---

**9.** In view of this Court's ruling on defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), there is no need to reach

the motion made on behalf of defendant Benderson in his individual capacity.