GREAT LAKES DREDGE & DOCK CO. ET AL. *v.* HUFFMAN, ADMINISTRATOR, DIVISION OF EMPLOYMENT SECURITY, LOUISIANA DEPARTMENT OF LABOR.

No. 849. Argued May 5, 6, 1943.—Decided May 24, 1943.

*Mr. R. Emmett Kerrigan,* with whom *Mr. James J. Morrison* was on the brief, for petitioners.

*Mr. W. C. Perrault,* Assistant Attorney General of Louisiana, with whom *Mr. Eugene Stanley,* Attorney General, was on the brief, for respondent.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

Petitioners brought this suit in the district court against respondent, a state officer charged with the administration and enforcement of the Louisiana Unemployment Compensation Law (Act 97 of 1936, as amended by Act 164 of 1938, Act 16 of the First Extraordinary Session of 1940, and Acts 10 and 11 of 1940). The complaint alleges that petitioners have numerous classes of employees engaged in the navigation and operation of dredges and pile drivers and in the operation of quarter boats, tugs, launches,

barges and other vessels, all used in deepening, dredging, extending and otherwise improving channels underlying the navigable waters of the state; and that the tax or contribution to the state unemployment insurance fund which the state law would exact from each of petitioners exceeded, when the suit was brought, the sum of $3,000. The relief prayed is a declaratory judgment that the state law as applied to petitioners and their employees is unconstitutional and void.

After a trial the district court held the statute applicable to petitioners and their employees and, as applied to them, a valid exercise of state power. 43 F. Supp. 981. The formal judgment ordered dismissal of the suit, but it is to be interpreted in the light of the court's opinion, findings, and conclusions of law. *Metropolitan Co.* v. *Kaw Valley District,* 223 U. S. 519, 523; *Gulf Refining Co.* v. *United States,* 269 U. S. 125, 135; *Clark* v. *Williard,* 292 U. S. 112, 118; *American Propeller Co.* v. *United States,* 300 U. S. 475, 479–80. So interpreted it rests wholly on the court's declaration that the statute applied to petitioners is constitutional; it is thus in effect a declaratory judgment.

The Court of Appeals for the Fifth Circuit affirmed, 134 F. 2d 213, holding that the statute, in exacting from employers contributions to the state unemployment compensation fund, is a valid exercise of the state taxing power (see *Steward Machine Co.* v. *Davis,* 301 U. S. 548; *Carmichael* v. *Southern Coal Co.,* 301 U. S. 495); that the application of the Act to petitioners would not interfere with any characteristic feature of the general maritime law in its interstate and international aspects so as to fall under the ban of *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205 and cases following it; and that the Federal Social Security Act, 26 U. S. C. § 1607 (c) (4), by exempting from its operation officers and crews of vessels, has not "preempted the

field" or otherwise precluded the state from applying its law with respect to the employees in question.

Because of the public importance of the questions decided, we granted certiorari, 318 U. S. 754, and set the case for argument with *Standard Dredging Corp.* v. *Murphy* and *International Elevating Co.* v. *Murphy, post,* p. 306. In our order granting the writ, we requested counsel "to discuss in their briefs and on oral argument the question whether the declaratory judgment procedure can be appropriately used in this case where the complaint seeks a judgment against a state officer to prevent enforcement of a state statute."

The state act, as the court below held, exacts of employers payments into the state unemployment insurance fund, in the nature of an excise tax upon the exercise of the right or privilege of employing individuals and measured by a percentage of the wages paid. See *Carmichael* v. *Southern Coal & Coke Co., supra.* Petitioners have challenged the state's right to collect the tax, and have interposed, as a barrier to the collection, the present suit in the federal court for a declaratory judgment. The district court, as we have indicated, has in substance given a declaratory judgment, which the Circuit Court of Appeals has sustained. Save for that purpose those courts had no occasion to entertain the suit, or pronounce any judgment in it. Neither court, nor any of the parties, has questioned the sufficiency of the pleadings to present a case for a declaratory judgment. Without raising that issue here we pass at once to the question, submitted to counsel, whether the declaratory judgment procedure may be appropriately resorted to in the circumstances of this case.

In answering it the nature of the remedy afforded to taxpayers by state law for the illegal exaction of the tax is of importance. Section 18 of Article 10 of the Constitution of Louisiana of 1921 directs that: "The Legislature shall provide against the issuance of process to restrain

the collection of any tax and for a complete and adequate remedy for the prompt recovery by every taxpayer of any illegal tax paid by him." And Act 330 of 1938 sets up a complete statutory scheme to carry into effect the constitutional provision. By it the courts of the state are forbidden to restrain the collection of any state tax; and any person aggrieved and "resisting the payment of any amount found due, or the enforcement of any provision of such laws in relation thereto" shall pay the tax to the appropriate state officer and file suit for its recovery in either the state or federal courts. Pending the suit the amount collected is required to be segregated and held subject to any judgment rendered in the suit. If the taxpayer prevails in the suit, interest at two per cent per annum is added to the amount of taxes refunded.

This Court has recognized that the federal courts, in the exercise of the sound discretion which has traditionally guided courts of equity in granting or withholding the extraordinary relief which they may afford, will not ordinarily restrain state officers from collecting state taxes where state law affords an adequate remedy to the taxpayer. *Matthews* v. *Rodgers*, 284 U. S. 521. This withholding of extraordinary relief by courts having authority to give it is not a denial of the jurisdiction which Congress has conferred on the federal courts, or of the settled rule that the measure of inadequacy of the plaintiff's legal remedy is the legal remedy afforded by the federal not the state courts. *Stratton* v. *St. Louis S. W. Ry. Co.*, 284 U. S. 530, 533–34; *Di Giovanni* v. *Camden Ins. Assn.*, 296 U. S. 64, 69. On the contrary, it is but a recognition that the jurisdiction conferred on the federal courts embraces suits in equity as well as at law, and that a federal court of equity, which may in an appropriate case refuse to give its special protection to private rights when the exercise of its jurisdiction would be prejudicial to the public interest (*United States* v. *Dern*, 289 U. S. 352, 359–360; *Virginian*

*Ry. Co.* v. *Federation,* 300 U. S. 515, 549–53), should stay its hand in the public interest when it reasonably appears that private interests will not suffer. See *Pennsylvania* v. *Williams,* 294 U. S. 176, 185, and cases cited.

It is in the public interest that federal courts of equity should exercise their discretionary power to grant or withhold relief so as to avoid needless obstruction of the domestic policy of the states.

"The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it. Whenever the question has been presented, this Court has uniformly held that the mere illegality or unconstitutionality of a state or municipal tax is not in itself a ground for equitable relief in the courts of the United States. If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in the state courts, from which the cause may be brought to this Court for review if any federal question be involved." *Matthews* v. *Rodgers, supra,* 525–26.

Interference with state internal economy and administration is inseparable from assaults in the federal courts on the validity of state taxation, and necessarily attends injunctions, interlocutory or final, restraining collection of state taxes. These are the considerations of moment which have persuaded federal courts of equity to deny relief to the taxpayer—especially when the state, acting within its constitutional authority, has set up its own adequate procedure for securing to the taxpayer the recovery of an illegally exacted tax.

Congress recognized and gave sanction to this practice of federal equity courts by the Act of August 21, 1937, 50

Stat. 738, enacted as an amendment to § 24 of the Judicial Code, 28 U. S. C. § 41 (1). This provides that "no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the assessment, levy, or collection of any tax imposed by or pursuant to the laws of any State where a plain, speedy, and efficient remedy may be had at law or in equity in the courts of such state." The earlier refusal of federal courts of equity to interfere with the collection of state taxes unless the threatened injury to the taxpayer is one for which the state courts afford no adequate remedy, and the confirmation of that practice by Congress, have an important bearing upon the appropriate use of the declaratory judgment procedure by the federal courts as a means of adjudicating the validity of state taxes.

It is true that the Act of Congress speaks only of suits "to enjoin, suspend, or restrain the assessment, levy, or collection of any tax" imposed by state law, and that the declaratory judgment procedure may be, and in this case was, used only to procure a determination of the rights of the parties, without an injunction or other coercive relief. It is also true that that procedure may in every practical sense operate to suspend collection of the state taxes until the litigation is ended. But we find it unnecessary to inquire whether the words of the statute may be so construed as to prohibit a declaration by federal courts concerning the invalidity of a state tax. For we are of the opinion that those considerations which have led federal courts of equity to refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in the use of the declaratory judgment procedure.

The statutory authority to render declaratory judgments permits federal courts by a new form of procedure to exercise the jurisdiction to decide cases or controversies, both at law and in equity, which the Judiciary Acts had already conferred. *Aetna Life Ins. Co.* v. *Haworth,* 300

U. S. 227. Thus the Federal Declaratory Judgments Act (Act of June 14, 1934, 48 Stat. 955, as amended, 28 U. S. C. § 400) provides in § 1 that a declaration of rights may be awarded although no further relief be asked, and in § 2 that "further relief based on a declaratory judgment or decree may be granted whenever necessary or proper."

The jurisdiction of the district court in the present suit, praying an adjudication of rights in anticipation of their threatened infringement, is analogous to the equity jurisdiction in suits *quia timet* or for a decree quieting title. See *Nashville, C. & St. L. Ry. Co.* v. *Wallace*, 288 U. S. 249, 263. Called upon to adjudicate what is essentially an equitable cause of action, the district court was as free as in any other suit in equity to grant or withhold the relief prayed, upon equitable grounds. The Declaratory Judgments Act was not devised to deprive courts of their equity powers or of their freedom to withhold relief upon established equitable principles. It only provided a new form of procedure for the adjudication of rights in conformity to those principles. The Senate committee report on the bill pointed out that this Court could, in the exercise of its equity power, make rules governing the declaratory judgment procedure. S. Rep. No. 1005, 73d Cong., 2d Sess., p. 6. And the House report declared that "large discretion is conferred upon the courts as to whether or not they will administer justice by this procedure." H. R. Rep. No. 1264, 73d Cong., 2d Sess., p. 2; and see *Brillhart* v. *Excess Ins. Co.*, 316 U. S. 491, 494; Borchard, Declaratory Judgments (2d ed.) p. 312.

The considerations which persuaded federal courts of equity not to grant relief against an allegedly unlawful state tax, and which led to the enactment of the Act of August 21, 1937, are persuasive that relief by way of declaratory judgment may likewise be withheld in the sound discretion of the court. With due regard for these considerations, it is the court's duty to withhold such relief

when, as in the present case, it appears that the state legislature has provided that on payment of any challenged tax to the appropriate state officer, the taxpayer may maintain a suit to recover it back. In such a suit he may assert his federal rights and secure a review of them by this Court. This affords an adequate remedy to the taxpayer, and at the same time leaves undisturbed the state's administration of its taxes.

The Act of August 21, 1937, was predicated upon the desirability of freeing, from interference by the federal courts, state procedures which authorize litigation challenging a tax only after the tax has been paid. See S. Rep. No. 1035, 75th Cong., 1st Sess.; H. R. Rep. No. 1503, 75th Cong., 1st Sess. Even though the statutory command be deemed restricted to prohibition of injunctions restraining collection of state taxes, its enactment is hardly an indication of disapproval of the policy of federal equity courts, or a mandatory withdrawal from them of their traditional power to decline jurisdiction in the exercise of their discretion.

For like reasons, we think it plain also that the enactment of the Act of August 30, 1935, 49 Stat. 1027, 28 U. S. C. § 400 (1), which excluded from the operation of the Declaratory Judgments Act all cases involving federal taxes, cannot be taken to deprive the courts of their discretionary authority to withhold declaratory relief in other appropriate cases. This amendment was passed merely for the purpose of "making it clear" that the Declaratory Judgments Act would not permit "a radical departure from the long-continued policy of Congress" to require prompt payment of federal taxes. See S. Rep. No. 1240, 74th Cong., 1st Sess., p. 11; H. R. Rep. No. 1885, 74th Cong., 1st Sess., p. 13.

The judgment of dismissal below must therefore be affirmed, but solely on the ground that, in the appropriate exercise of the court's discretion, relief by way of a declar-

atory judgment should have been denied without consideration of the merits.

*Affirmed.*