**CENTRAL OF GEORGIA RAILWAY COMPANY, Plaintiff,**

v.

**BROTHERHOOD OF LOCOMOTIVE ENGINEERS et al., Defendants.**

Civ. A. No. 1594.

United States District Court
M. D. Georgia,
Macon Division.
March 21, 1960.

John B. Miller, Julian C. Sipple, Savannah, Ga., H. D. Russell, Macon, Ga., Walter J. Cummings, Jr., Chicago, Ill., for plaintiff.

Benning M. Grice, Macon, Ga., for defendants.

BOOTLE, District Judge.

In this action for declaratory judgment, Central of Georgia Railway Company (hereinafter referred to as Central) seeks a declaration by this court that, under the provisions of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., defendant unions are prohibited from striking to enforce a money award granted in their favor against Central by the Railroad Adjustment Board before the judicial remedy created by Section 3, First (p) of the Act, 45 U.S.C.A. § 153, First (p), for enforcement of such award is exhausted. The complaint names as defendants the Brotherhood of Locomotive Engineers (hereinafter referred to as Engineers), its General Chairman on the Central, and certain of its local divisions; the Brotherhood of Railroad Trainmen (hereinafter referred to as Trainmen), its General Chairman on the Central, and certain of its local lodges; two Central employees and the widow of a deceased employee, in favor of which three employees the award of the Adjustment Board was made.

Defendants have filed a motion to dismiss the complaint on three grounds: the complaint 1) "fails to state a claim * * * upon which relief can be granted"; 2) "shows upon its face that there is no justiciable controversy"; and 3) "shows upon its face that the plaintiff is not entitled to the relief which it seeks by declaratory judgment or otherwise." In support of said motion defendants have offered affidavits of Guy L. Brown, Grand Chief Engineer of Engineers, W. P. Kennedy, President of Trainmen, C. L. Cowan, chairman of the General Committee of Adjustment of Engineers on the Central, and B. G. Byington, chairman of the General Grievance Committee of Trainmen on the Central. In opposition to said motion Central has offered the affidavit of W. E. Dillard, its President and General Manager.

Since "matters outside the pleadings [have been] presented to and not excluded by the court" and, since all parties have been given all opportunity desired by them to present all material made pertinent to defendants' motion to dismiss by Fed.R.Civ.P. 56, 28 U.S.C.A., defendants' motion to dismiss has been treated and will be disposed of as one for summary judgment. Fed.R.Civ.P. 12 (b).

After giving careful consideration to the pleadings and affidavits, this court, aided by exhaustive briefs, reply briefs and oral arguments of counsel, has arrived at the conclusion that, for the reasons hereinafter set forth, defendants' motion must be granted. A brief résumé of the dispute between these parties and the circumstances surrounding that dispute follows.

On or about February 8, 1954, defendant Engineers, acting on behalf of J. S. Avera, filed a claim with the National Railroad Adjustment Board (hereinafter referred to as Adjustment Board), for a money award under the Railway Labor Act, supra. On or about the same date, defendant Trainmen, acting on behalf of John Short, Jr., and Jim Nunn, filed similar claims with the Adjustment Board. In the Adjustment Board proceedings the Brotherhoods complained that Central had improperly changed the home terminal of the assignment known as Americus Switch Local from Americus to Albany, Georgia in 1953, and alleged that such change had resulted in the three

employees named above being deprived of employment on Central's railroad.

On January 20, 1959, the Adjustment Board issued its award in favor of the claimants, and four days thereafter Central transferred the home terminal of the Switch Local from Albany to Americus, Georgia.

At a conference between representatives of Central and the Brotherhoods on February 13, 1959, W. J. Collins, Central's Director of Labor Relations, indicated a willingness to make certain payments which Central concedes are due the claimants, but the representatives of the Brotherhoods refused to accept any payment less than the full amount the Brotherhoods contend is due under the award. In reply to a suggestion by Central's representatives that the Brotherhoods follow the procedure prescribed in Section 3, First (p) of the Act, 45 U.S.C.A. § 153, First (p), for enforcing the award, B. G. Byington, Trainmen's representative, with the concurrence of C. L. Cowan, representing the Engineers, replied: "You know we don't take these kind of cases to court, we take the shorter route."

Four days later Central transmitted a written request for interpretation of the award to the Adjustment Board, and that Board rendered its interpretation under date of June 22, 1959. At the time the parties submitted their briefs to this court and presented their oral arguments, no payments had been made by Central under the award, and no judicial action to enforce the award had been instituted by the Brotherhoods.

Although Central alleges that the Brotherhoods "intended to strike against and otherwise create a work stoppage on the property of the Railway Company in the event the full amount the said Brotherhoods contend is due under the award of January 20, 1959 was not paid by February 20, 1959" and that it "has had no indication from the defendant Brotherhoods of any intention on their part to recede from their earlier position", the only allegation made to support such a conclusion on the part of Central is the statement of C. L. Cowan, chairman of the General Committee of Adjustment of Engineers on the Central, made at the conference of February 13, 1959, more than a year ago. On the other hand, Mr. Cowan states in his affidavit that he has "no right to call or put into effect any strike without the express approval of Guy L. Brown, who is the Grand Chief Engineer * * * of the [Engineers]". Mr. Cowan's affidavit is fully supported by that of Mr. Brown and is not rebutted by any affidavit submitted by Central. W. P. Kennedy, President of the Trainmen, and B. G. Byington, chairman of the General Grievance Committee of the Trainmen on the Central, concur in a similar statement about the internal procedure for calling a strike of the Trainmen.

Although the affidavits submitted by both the Engineers and the Trainmen admit that votes in favor of withdrawing from service have been cast by the General Grievance Committee of the Trainmen on the Central and by a substantial majority of the engineers on the Central, they deny that any authorization has been given for the calling of a strike or the fixing of a strike date. The affidavit of Central's president offered in rebuttal states that on December 31, 1957 a picket line on Central's property was established by Messrs. Cowan and Byington without such authorization.

The first question raised by the argument of counsel, and the only question which the court finds it necessary to answer, is whether or not the complaint, as illuminated by the affidavits submitted by the parties, presents a justiciable controversy. The Declaratory Judgment Act, 28 U.S.C.A. § 2201, provides that any court of the United States "may" grant a declaratory judgment "[i]n a case of actual controversy within its jurisdiction."

It appears to be well settled that the Declaratory Judgment Act, supra, only provides a new form of procedure for the adjudication of rights in conformity

with the constitutional requirement of the existence of a "case" or "controversy". Great Lakes Dredge & Dock Co. v. Huffman, 1943, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407; Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 1937, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617. In fact, the Act itself recognizes the necessity of an "actual controversy". The cases also recognize the existence of judicial discretion in withholding declaratory relief.

"But when all of the axioms have been exhausted and all words of definition have been spent, the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power. While the courts should not be reluctant or niggardly in granting this relief in the cases for which it was designed, they must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions, especially in the field of public law. A maximum of caution is necessary in the type of litigation that we have here, where a ruling is sought that would reach far beyond the particular case. Such differences of opinions or conflicts of interest must be 'ripe for determination' as controversies over legal rights. The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."

Public Service Comm. of Utah v. Wycoff Co., 1952, 344 U.S. 237, 73 S.Ct. 236, 240, 97 L.Ed. 291.

Another court has said:

"The essential distinction between a declaratory judgment action and the usual action is that in the former no actual wrong need have been committed or loss have occurred in order to sustain the action, but there must be no uncertainty that the loss will occur or that the asserted right will be invaded. If that is clearly established, one may proceed under the Declaratory Judgment Act and need not await the actual happening of the event complained of."

Johnson v. Interstate Transit Lines, 10 Cir., 1947, 163 F.2d 125, 128, 172 A.L.R. 1242.

Speaking of the problem which confronts this court, whether the present disagreement is "ripe" for determination, the Supreme Court has said:

"Basically, the question in each case is whether the facts alleged, under all of the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

Maryland Casualty Co. v. Pacific Coal & Oil Co., 1941, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 829.

In order to find a controversy of such "immediacy and reality" under the facts presented here, the court would have to impute a substantial strike threat to the Brotherhoods which the facts do not support. Mr. Cowan's statement, even if it could be construed as a strike threat, was made over a year ago. And it is undisputed that no strike has been authorized nor any strike date fixed throughout the entire dispute. Central is, in effect, asking this court to give an advisory opinion, a function it is not empowered to perform.

It appearing that no justiciable controversy is presented, it is hereby

Ordered that defendants' motion for summary judgment be and the same is hereby granted, and the complaint is hereby dismissed for failure to state a claim upon which relief can be granted. Costs will be taxed against the plaintiff.