**Arthur STEIN, Salvatore Alvarez, Bridget Murphy, Carl Stomp and Sang Choi, and on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Paul G. VALLAS, Director of the Chicago Department of Revenue, Richard M. Daley, Mayor of the City of Chicago, and the City of Chicago, an Illinois Municipal Corporation, Defendants.**

No. 92 C 6671.

United States District Court, N.D. Illinois, E.D.

Oct. 6, 1993.

---

George C. Pontikes, George C. Pontikes & Associates, Chicago, IL, for all plaintiffs.

Paul W. McVicker, Pyshos and McVicker, Ltd., Arlington Heights, IL, for Arthur Stein only.

Lizabeth J. Wickham, City of Chicago, Law Dept., Corp. Counsel, Chicago, IL, for all defendants.

Kelly Raymond Welsh, Lizabeth J. Wickham, Sharon Baldwin, City of Chicago, Law Dept., Corp. Counsel, Chicago, IL, for Mayor Daley & City of Chicago.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

The purported class of current or former city-licensed laundromat owners ("Plaintiffs") filed this class action against the Defendants, the City of Chicago, its Mayor, and its Director of the Department of Revenue (collectively the "City"), on October 2, 1992. The City filed a Motion to Dismiss the Plaintiffs' Complaint under FED.R.CIV.P. 12(b)(1) and 12(b)(6). For the reasons set forth below, the City's Motion is granted, and the Plaintiffs' Complaint is dismissed without prejudice to seek relief in state court.

### Background

Plaintiffs seek declaratory relief and damages for the City's alleged discriminatory enforcement of the Chicago Transaction Tax ("Transaction Tax"), codified at Chapter 3–32 of the Municipal Code of Chicago (1992). The Transaction Tax took effect in February of 1987 and assessed a 6% tax on leases of personal property. The Transaction Tax, as originally enacted, applied to leases of coin-operated clothes washers and dryers.

The City eventually amended the Transaction Tax. Effective March 1, 1992, Chapter 3–32 no longer applied to leases of personal property where the entire consideration for the lease is made by placing money into an attached mechanism. Thus, as of March 1, 1992, the Transaction Tax no longer applied to coin-operated clothes washers and dryers.

The gist of the Plaintiffs' Complaint is that the City declined to enforce the Transaction Tax against members of a local industry group, the Coin Laundry Association[1], while strictly enforcing it against non-members. The Plaintiffs allege that the City's unequal enforcement of the Transaction Tax denied them equal protection of law as guaranteed by the Fourteenth Amendment to the United States Constitution. Consequently, they bring this suit under 42 U.S.C. § 1983. The City asserts the statute of limitations, mootness, and failure to allege class-based discrimination in its Motion to Dismiss.

### Discussion

This court need not consider the City's defenses because the United States Supreme Court's decision in *Fair Assessment in Real Estate Assoc. v. McNary*, 454

---

1. The Plaintiffs incorrectly identified the Coin Laundry Association as the Chicago Laundromat Association in their Complaint. They correctly identify it in their Response to the Defendants' Motion to Dismiss. Response to Motion to Dismiss at p. 3 n. 1.

835 F.Supp.--12

U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), bars Plaintiffs' suit. The *McNary* petitioners brought a § 1983 suit alleging that the respondents, St. Louis County officials and officials of the state of Missouri, deprived them of equal protection and due process under the Fourteenth Amendment by unequally taxing their real estate. *Id.* at 105–06, 102 S.Ct. at 180–81, 70 L.Ed.2d at 277.

The petitioner's complaint in *McNary* specifically alleged that two of the respondents' practices denied them due process and equal protection. First, the petitioners alleged that higher assessments levied on newly improved properties denied them equal protection because properties without new improvements were taxed at a lower rate. Second, the petitioners alleged that the respondents denied them due process because respondents specifically targeted for reassessment those taxpayers who successfully challenged their property assessments. *Id.* at 106, 102 S.Ct. at 181, 70 L.Ed.2d at 277.

■ As the City has done in this suit, the respondents in *McNary* asserted the Tax Injunction Act ("Act")[2] as a defense. The Act deprives district courts of subject matter jurisdiction over suits to enjoin state tax collection, suits to order a state to refund taxes paid, or suits challenging the validity of state tax systems. Cases arising before the Act, moreover, prohibited federal courts sitting in equity from enjoining state tax collection so long as available state remedies adequately protected federal rights. *See Mat-*

*thews v. Rodgers,* 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932); *Singer Sewing Machine Co. v. Benedict,* 229 U.S. 481, 33 S.Ct. 942, 57 L.Ed. 1288 (1913); *Boise Artesian Water Co. v. Boise City,* 213 U.S. 276, 29 S.Ct. 426, 53 L.Ed. 796 (1909).

Furthermore, even after Congress passed the Act in 1937, federal courts continued to rely on this earlier principle of comity. *McNary,* 454 U.S. at 103, 102 S.Ct. at 179, 70 L.Ed.2d at 275. In *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), for example, the Supreme Court held that federal courts may not render declaratory judgments on the constitutionality of state tax laws in deference to comity. Thus, the Court in *Huffman* found it unnecessary to rely on the Act because the comity principal alone precluded federal jurisdiction.[3]

The Supreme Court in *McNary,* however, recognized that conflict arises when defendants assert the Act as a defense in § 1983 suits. On the one hand, the Act and prior cases based on comity bar federal injunctive challenges to state tax laws. The Court's *Huffman* decision, for example, reaffirms that comity alone bars declaratory judgments against state tax laws. *McNary,* 454 U.S. at 105, 102 S.Ct. at 180, 70 L.Ed.2d at 276. Section 1983, on the other hand, "cut a broad swath" and "gave a federal cause of action to ... anyone ... who was able to prove that his constitutional or federal rights had been denied by any State." *McNary,* 454 U.S. at 103–04, 102 S.Ct. at 180, 70 L.Ed.2d at 275.

2. The Tax Injunction Act provides that: "The District Courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341 (1988). The City raises this statute as a defense in its Reply Memorandum.

3. The reasons supporting federal deference to state tax collection and administration decisions are explained in *McNary:*

> The special reasons justifying the policy of federal noninterference with state tax collection are obvious. The procedures for mass assessment and collection of state taxes and for administration and adjudication of taxpayers' disputes with tax officials are generally complex and necessarily designed to operate according to established rules. State tax agencies are organized to discharge their responsi-

bilities in accordance with the state procedures. If federal declaratory relief were available to test state tax assessments, state tax administration might be thrown into disarray, and taxpayers might escape the ordinary procedural requirements imposed by state law. During the pendency of the federal suit the collection of revenue under the challenged law might be obstructed, with consequent damage to the State's budget, and perhaps a shift to the State of the risk of taxpayer insolvency. Moreover, federal constitutional issues are likely to turn on questions of state tax law, which, like issues of state regulatory law, are more properly heard in state courts.

454 U.S. at 108 n. 6, 102 S.Ct. at 182 n. 6, 70 L.Ed.2d at 279 n. 6 (quoting *Perez v. Ledesma,* 401 U.S. 82, 128 n. 17, 91 S.Ct. 674, 698 n. 17, 27 L.Ed.2d 701, 730 n. 17 (1971)).

Confronted with this problem, the *McNary* Court created a bright-line rule and held that the principal of comity bars taxpayers from asserting § 1983 claims against state tax systems in federal court. 454 U.S. at 116, 102 S.Ct. at 186, 70 L.Ed.2d at 283. The Court further held that taxpayers must first rely on state remedies to safeguard federal rights, provided that those state remedies are plain, adequate and complete.[4] *Id.*, 454 U.S. at 116, 102 S.Ct. at 186, 70 L.Ed.2d at 283.

The *McNary* court rejected the petitioners' argument that actions for damages intruded upon state tax systems far less than injunctions or declaratory judgments. The Court reasoned that, before assessing damages in such actions, the district court would in effect enter a declaratory judgment that the respondents' acts violated the Constitution. Thus, the Court found that a suit for damages under § 1983 would entail the equivalent of a declaratory judgment. The Court, of course, had earlier prohibited such declaratory judgments in *Huffman. Id.*, 454 U.S. at 116, 102 S.Ct. at 186, 70 L.Ed.2d at 283.

The Supreme Court in *McNary* also found that the prospect of personal liability as a consequence of official actions would likely discourage state tax officials from performing their duties. *Id.* at 115, 102 S.Ct. at 185, 70 L.Ed.2d at 283. The Court noted that since the respondents in *McNary* "[were] not one or two isolated administrators, but virtually every key tax official in St. Louis County," any chilling effect upon state tax collection would be aggravated. *Id.* at 114, 102 S.Ct. at 185, 70 L.Ed.2d at 282. Thus, the Court concluded that the § 1983 suit at issue in *McNary* could, in effect, suspend the collection of real property taxes. The Court considered such a result "a form of federal-court interference previously rejected ... on principles of federalism", and dismissed the suit. *Id.* at 115, 102 S.Ct. at 185, 70 L.Ed.2d at 283. A similar result is warranted here.

*McNary* clearly bars the Plaintiffs' § 1983 suit; it is directly analogous to this case. The Plaintiffs here, as in *McNary*, seek dam-ages for an alleged unequal enforcement of a local tax law. The relief the Plaintiffs seek here would interfere with the City's legitimate power to collect Transaction Taxes due for the period before the March 1992 amendment, and would discourage City officials from carrying out their duty to collect past-due taxes. Just as in *McNary*, the fact that two of the defendants in this case are high-ranking City officials only underscores the possibility that the Plaintiffs' suit could discourage vigorous tax enforcement. Thus, plaintiffs' suit is barred under *McNary*.

Pursuant to *McNary* and the Act, however, plaintiff may seek relief in federal court if they lack a "plain, speedy and efficient" remedy under local law. Here, the Plaintiffs enjoy a plain, speedy and efficient appeal of the City's Transaction Tax assessments under both state law and local ordinance. The City correctly points out that the Plaintiffs may seek review of any Transaction assessments under Chapter 3–4–330 of the Municipal Code of Chicago. The Plaintiffs, moreover, may seek review of the City's tax assessment in the Circuit Court of Cook County under 735 ILCS 5/3–101, *et seq.* (1993) (formerly codified at ILL.REV.STAT. ch. 110, para. 3–101 *et seq.* (1992)). Therefore, this exception is not applicable.

Additionally, federal courts have approved of Illinois' taxation appeal procedure. *See Rosewell v. La Salle Nat. Bank,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981); *Huber Pontiac, Inc. v. Whitler,* 585 F.2d 817 (7th Cir.1978). Thus, as *McNary* requires, the Plaintiffs enjoy effective remedies under state law and therefore may not seek relief in federal court.

### *Conclusion*

For the reasons discussed above, the City's Motion to Dismiss is granted. The Plaintiffs, however, may seek relief with the State.

---

4. The Court stated that "plain, adequate, and complete" remedies are essentially the same as the "plain, speedy and efficient" remedies required under the Act. Consequently, courts should look to the numerous federal decisions considering whether a given state remedy is "plain, speedy and efficient" within the meaning of the Act. *McNary*, 454 U.S. at 116 n. 8, 102 S.Ct. at 186 n. 8, 70 L.Ed.2d at 283 n. 8.