FOX RIVER VALLEY RAILROAD COR-
  PORATION and Green Bay and Western
  Railroad Company, Plaintiffs,

v.

DEPARTMENT OF REVENUE OF the
  STATE OF WISCONSIN; Mark D.
  Bugher, individually and in his capacity
  as Secretary of Revenue of the Wiscon-
  sin Department of Revenue; John W.
  Rader, individually and in his capacity
  as Administrator of the Division of State
  and Local Finance at the Wisconsin De-
  partment of Revenue; Robert Steffes,
  individually and in his capacity as Di-
  rector of Bureau of Utility and Special
  Taxes at the Wisconsin Department of
  Revenue; and Jerry Smith, individually
  and in his capacity with the Bureau of
  Utility and Special Taxes at the Wiscon-
  sin Department of Revenue, Defendants.

Civ. A. No. 93–C–1240.

United States District Court,
E.D. Wisconsin.

Sept. 29, 1994.

David B. Potter, Oppenheimer, Wolff & Donnelly, St. Paul, MN, for plaintiff.

Peter C. Anderson, Asst. Atty. Gen., Madison, WI, for defendant.

## ORDER

TERENCE T. EVANS, Chief Judge.

█ Fox River Valley Railroad Corporation and Green Bay and Western Railroad Company (which I shall refer to jointly as Fox River Rail) have filed a complaint against the Wisconsin Department of Revenue and a number of its employees (which I'll call DOR), claiming that DOR's 1993 assessment of Fox River Rail for purposes of Wisconsin's ad valorem tax was improper. Subsequently, DOR filed a motion to dismiss a number of Fox River Rail's claims and a motion to stay those claims that DOR did not move to dismiss. It is these motions that I consider today.

The relevant facts are not in dispute. When DOR assessed Fox River Rail for its 1991 valuation summary, it used the procedures it typically uses in assessing operating corporations. These procedures yielded an assessed value of slightly more than $4.5 million for Green Bay and Western Railroad and slightly less than $19 million for Fox River Valley Railroad.

On January 8, 1992, an agreement was reached between Fox River Rail and Fox Valley and Western Ltd. for the purchase of the majority of the operations of Fox River Rail by Fox Valley and Western Ltd. In its 1992 and 1993 assessments for Fox River Rail, the Department of Revenue deviated from the procedure it had used for its 1991 assessment and used the purchase price of Fox River Rail as a basis for its assessment. Using this purchase price, DOR determined the value of Green Bay and Western Railroad to be approximately $7 million in both its 1992 and 1993 assessments, and determined the value of Fox River Valley Railroad to be slightly less than $38 million in its 1992 assessment and slightly more than $50 million in its 1993 assessment.

The argument in this case centers on whether DOR may use the sales price of Fox River Rail as an indicator of the fair market value of Fox River Rail. Fox River Rail claims that DOR violated state and federal law when it used the sale price of Fox River Rail as the basis for the 1993 assessment. DOR disagrees.

In count 2 of its complaint, Fox River Rail claims that DOR violated the Constitution when it performed its 1993 assessment. Specifically, Fox River Rail claims that DOR violated the commerce clause and violated its rights protected by the equal protection clause. In count 4 of its complaint, Fox River Rail claims that DOR's constitutional violations in turn violated 42 U.S.C. § 1983.[1] To remedy these violations, Fox River Rail has requested a declaration that DOR's 1993 assessment violates the Constitution and 42 U.S.C. § 1983, an injunction preventing DOR from collecting taxes on the 1993 assessment, and damages. In response to Fox River Rail's claims in count 2 and count 4, DOR argues that the claims are barred by 28 U.S.C. § 1341 and principles of comity.

In 1937, Congress passed the Tax Injunction Act, 28 U.S.C. § 1341, which reads:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

On its face, section 1341 abrogates federal court jurisdiction to hear Fox River Rail's request for an injunction as long as an appropriate remedy is available in state court.

In 28 U.S.C. § 1341, Congress recognized principles of comity that existed long before 1937. These principles are inherent to the system of governance in the United States and existed at its founding. To coexist on the same soil, each state, and the union of the several states, must be courteous to each other, and afford one another every civility. It is the need and desire that this courtesy remain that is reflected in the legal principle of comity.

---

1. The familiar language of 42 U.S.C. § 1983 reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Long before the passage of 28 U.S.C. § 1341, the Supreme Court of the United States recognized that one of the most important and sensitive aspects of sovereignty is the ability to develop one's own taxation system. As Justice Field wrote in 1871:

It is upon taxation that the several states chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government and thereby cause serious detriment to the public.

*Dows v. Chicago,* 78 U.S. (11 Wall) 108, 110, 20 L.Ed. 65 (1871). In 28 U.S.C. § 1341, Congress explicitly recognized these principles of comity that have existed in the United States since its founding.

The Supreme Court of the United States turned to these principles in 1943, 6 years after the passage of section 1341, when it stated that actions seeking declarations that state taxation systems are unconstitutional overly intrude on the states' ability to govern. The court held that these declaratory actions do not belong in federal court if appropriate remedies exist in state court.

The considerations which persuaded federal courts of equity not to grant relief against an allegedly unlawful state tax, and which led to the enactment of the Act of August 21, 1937 [28 U.S.C. § 1341], are persuasive that relief by way of declaratory judgment may likewise be withheld in the sound discretion of the court. [I]t is the court's duty to withhold such relief when, as in the present case, it appears that the state legislature has provided that on payment of any challenged tax to the appropriate state officer, the taxpayer may maintain a suit to recover it back. In such a suit he may assert his federal rights and secure a review of them by this Court. This affords an adequate remedy to the taxpayer, and at the same time leaves undisturbed the state's administration of its taxes.

*Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 300–301, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943).

In *Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981), the United States Supreme Court extended the holding of *Huffman* to actions for damages. In *McNary* the Court held that all claims that state taxation systems violate the Constitution and 42 U.S.C. § 1983 generally belong in state court. The Supreme Court recognized the conflict between the fundamental principles of comity and the language of section 1983. *Id.* at 103–105, 102 S.Ct. at 179–80. However, the Supreme Court held that "the rightful independence of state governments" and the courtesy and civility which is necessary to maintain that independence trumps section 1983.

[D]espite the ready access to federal courts provided by *Monroe* and its progeny, we hold that taxpayers are barred by the principle of comity from asserting section 1983 actions against the validity of state tax systems in federal courts. Such taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in this court.

*Id.* at 116, 102 S.Ct. at 186.

■■■ Fox River Rail asserts in its opposition brief that the remedies available to it in Wisconsin are not plain, speedy, and efficient.[2] While this phrase has eluded a specific formulation, the Supreme Court of the United States has noted on occasion that where "a full hearing and judicial determination of the controversy is assured," a state has provided a plain, speedy, and efficient remedy. *Rosewell v. LaSalle Nat'l Bank,* 450 U.S. 503, 513–514, 101 S.Ct. 1221, 1229, 67 L.Ed.2d 464 (1981) (quoting Senator Bone,

**2.** I "discern no significant difference, for purposes of the principles recognized in this case, between remedies which are 'plain, adequate, and complete' as that phrase has been used in articulating the doctrine of equitable restraint, and those which are 'plain, speedy and efficient,' within the meaning of § 1341." *McNary* at 116 n. 8, 102 S.Ct. at 186 n. 8.

81 Cong.Rec. 1416 (1937), and the Senate Report on the Johnson Act, S.Rep. No. 701, 72nd Cong., 1st Sess., 1–2 (1932)). Fox River Rail has presented no facts which make me believe that a full hearing and a fair judicial determination of its claim will not be assured in the state courts of Wisconsin.

Fox River Rail claims in count 1 of its complaint that DOR's 1993 assessment violates the Railroad Revitalization and Regulatory Reform Act of 1976—what I shall call the 4R Act. Specifically, Fox River Rail claims that DOR's 1993 assessment violates 49 U.S.C. § 11503(b), which states:

> The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:
>
> (1) assess rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

Unlike its constitutional claims, Fox River Rail's section 11503 claim is not barred by section 1341 or principles of comity. In Section 11503(c), Congress gave the federal courts jurisdiction "to prevent a violation of subsection (b) of this section" and specifically exempted actions under section 11503 from the Tax Injunction Act, 28 U.S.C. § 1341. Furthermore, the Supreme Court of the United States has specifically stated that principles of comity do not apply to actions taken under section 11503. *Burlington Northern R.R. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 464, 107 S.Ct. 1855, 1861, 95 L.Ed.2d 404 (1987).

█ Moreover, Fox River Rail's section 11503 claim is also not barred by principles of sovereign immunity. The eleventh amendment to the United States Constitution generally prohibits suits against a state. However, Congress may abrogate this immunity to safeguard competing constitutional rights or concerns such as those protected by the fourteenth amendment.

█ To abrogate a state's eleventh amendment immunity, Congress must clearly state its intent to revoke this immunity. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). Congress made such a clear statement in section 11503 when it stated, "The following acts unreasonably burden and discriminate against interstate commerce, and *a State, subdivision of a State, or authority acting for a State or subdivision of a State* may not do any of them.... [A] district court of the United States has jurisdiction ... to prevent [such acts]." 49 U.S.C. § 11503(b), (c) (emphasis added). Thus, I repeat that Fox River Rail's section 11503 claim is not barred by the eleventh amendment.

█ There appears to be some confusion among the parties as to the contours of Fox River Rail's section 11503 claim. Part of this confusion comes from a number of Supreme Court decisions in which, as the defendants note, the Supreme Court has attempted to draw a distinction between a state adopting a valuation methodology and the state's application of that methodology to a particular individual. Unfortunately, attempts to draw this distinction have merely led to further confusion.

In an effort to clear up some of this confusion, I describe my view of the state's valuation methodology. In the absence of a fair sale, DOR applies a variety of different factors to determine the assessed value of property. However, in the presence of a fair sale, DOR uses the sales price of the property as the foundation for its assessment of the property's value.

It is the DOR's decision not to use its typical variety of different factors when a sale has occurred that may violate section 11503(b) when the decision applies to a railroad. I am not saying that this methodology is inappropriate under state law, violates the Constitution, or violates federal law if applied to a nonrailroad. I am merely saying that when this methodology is applied to a railroad it may lead to a situation where the state has assessed "rail transportation prop-

erty at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property." Such a situation violates the 4R Act.

The methods used in 1991 by DOR to assess Fox River Valley Railroad and Green Bay and Western Railroad generated values of approximately $20 million and approximately $6 million, respectively. Two years later, DOR used a different application of its valuation methodology and generated assessed values of $52 million and $8 million, respectively, for the two railroads. Thus, the 1991 assessment figures were 61 percent and 25 percent lower than the 1993 figures, respectively, for the two railroads. If other property in Fox River Valley Railroad's and Green Bay and Western Railroad's assessment jurisdictions were assessed in 1993 using the methodology that produced the lower figures for Fox River Valley Railroad and Green Bay and Western Railroad in 1991, section 11503(b)(1) may have been violated.

■ Fox River Rail's claim in count 3 is that DOR's 1993 assessment of Fox River Rail violated state law. Specifically, Fox River Rail claims that DOR did not follow the specifications stated in Wisconsin Statute § 76.07 during its 1993 assessment. This claim is barred by the eleventh amendment.[3]

As I noted above, the eleventh amendment prevents a state from being hailed into court unless Congress clearly states its intent to "overturn the constitutionally guaranteed immunity of the several states" on a particular issue. *Pennhurst,* 465 U.S. at 89, 104 S.Ct. at 900. Congress has made no statement indicating that it intended to abrogate the State of Wisconsin's sovereign immunity to claims in federal court that Wisconsin inappropriately applied Wisconsin Statute § 76.07. Moreover, as the Supreme Court has stated, "it is difficult to think of a greater intrusion on state sovereignty than when a

federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst* at 106, 104 S.Ct. at 911.

■ Fox River Rail argues that since the federal court has jurisdiction over its 4R Act claim against the state, principles of pendent jurisdiction should allow the court to hear the state law claim. However, constitutional mandates are not so easily overrun. As the Supreme Court has noted, "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." *Pennhurst* at 121, 104 S.Ct. at 919.

■ Fox River Rail also argues that Wisconsin's waiver of its sovereign immunity defense to cases brought in Dane County circuit court operates to waive the state's immunity to suits in federal court. *See* Wis. Stat. § 76.08. This argument is without merit. As the Supreme Court of the United States has stated, "[T]he Court consistently has held that a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts. See, *e.g., Florida Dept. of Health and Rehabilitative Servs. v. Florida Nursing Home Ass'n,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (*per curiam* )." *Pennhurst,* 465 U.S. at 99 n. 9, 104 S.Ct. at 907 n. 9.

■ At this point in time, judicial proceedings concerning DOR's 1993 assessment of Fox River Rail are proceeding in two different forums on different issues. Under federal law, I have jurisdiction to decide the narrow issue of whether DOR's 1993 assessment of Fox River Rail violated 49 U.S.C. § 11503. On the other hand, the state court, where current proceedings have been stayed by stipulation of Fox River Rail and DOR, may hear every issue raised here by Fox River Rail, i.e., whether DOR's 1993 assessment of Fox River Rail violated state law,

**3.** Fox River Rail argues that *its* state claim against the persons named in the complaint should not be dismissed on the basis of sovereign immunity because these defendants were named as individuals as well as in their official capacities. Since these individuals only affected Fox River Rail through their official capacities, this argument fails.

the United States Constitution, 49 U.S.C. § 11503, and 42 U.S.C. § 1983.

DOR argues that the pending state court action could have a critical impact on the limited federal case. DOR is correct. If the Dane County circuit court decides that DOR improperly assessed Fox River Rail and re-determines the assessment, Fox River Rail's claim under section 11503 will be moot. DOR further argues that due to the potentially determinative nature of the pending state court action, I should abstain from hearing Fox River Rail's federal claim at this point. Here, DOR is incorrect.

■■■ A congressional grant of jurisdiction over a particular suit creates a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). My ability to abstain from exercising federal jurisdiction is "extraordinary and narrow" and may only be exercised "where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959).

There is no countervailing interest in this case important enough for me to abstain from exercising my federal jurisdiction. None of the interests described in the three traditional abstention situations—*Pullman* abstention, *Burford* abstention, and *Younger* abstention—are controlling in this case. Moreover, "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," does not dictate that I may abstain from exercising my jurisdiction. *Colorado River* and *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952).

Furthermore, the Supreme Court has held that "a court should not defer the exercise of jurisdiction under a federal statute unless it is consistent with that intent." *Patsy v. Florida Board of Regents*, 457 U.S. 496, 501–502, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172 (1982). I agree with the Ninth Circuit and the Eleventh Circuit that abstention over a section 11503 claim is not only inconsistent with the intent of Congress in passing the Railroad Revitalization and Recovery Reform Act, but actually flies in the face of such congressional intent.

> [In section 11503] Congress meant to guarantee a federal forum for railroad suits, and only an exemption from abstention in all its forms would accomplish this purpose. Since Congress has spoken, it is not our province to alter the balance Congress struck in providing a federal forum for rail carrier claims of tax discrimination under section 11503.

*Southern Ry. Co. v. State Bd. of Equalization*, 715 F.2d 522, 529 (11th Cir.1983).

> We view the Supreme Court's opinion in *Burlington Northern* as an authoritative signal that the district court has an obligation to exercise the power specially vested in that court by Congress to adjudicate those § 11503 claims properly before it.

*Union Pacific R.R. v. Dept. of Revenue*, 920 F.2d 581, 586 (9th Cir.1990).

■■■ I note in passing that the parties stipulated to stay the pending state court action for 6 months while I determined DOR's motions to dismiss. Fox River Rail argues in its opposition brief that principles of judicial economy and efficiency will be served if the state court claims remain in abeyance until all federal proceedings are completed. This is not necessarily the case. The claims that are presented in the state court proceeding are substantially different from the narrow claim that remains in this forum. Therefore, my decision today should have no effect whatsoever on pending state court litigation.

Accordingly, IT IS ORDERED that DOR's motion to dismiss Fox River Rail's counts 2 through 4 is GRANTED and those counts are DISMISSED.

IT IS FURTHER ORDERED that DOR's motion to stay further proceedings with respect to count 1 is DENIED.

A telephone conference to discuss further proceedings in this case is scheduled for October 18, 1994, at 8:45 a.m.