**10-1210-cv, 10-1785-cv**
**Abuzaid et al. v. Woodward**

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: June 22, 2011          Decided: August 12, 2013 )

Docket Nos. 10-1210-cv, 10-1785-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

ADEL ABUZAID, ZAID ABUZAID, ARREF H. KASSEM, MOHAMED MOHAMED,

*Plaintiffs-Appellees-Cross-Appellants*,

v.

THOMAS H. MATTOX, Commissioner of the New York State Department of Taxation and Finance,[*]

*Defendant-Appellant-Cross-Appellee*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: NEWMAN, LEVAL, and POOLER, *Circuit Judges.*

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Commissioner Thomas H. Mattox is automatically substituted for former acting Commissioner Jamie Woodward as respondent in this case. The Clerk of Court is directed to amend the official caption to conform to the above.

Defendant, the Commissioner of the New York State Department of Taxation and Finance, appeals from a judgment of the United States District Court for the Northern District of New York (Kahn, *J.*), enjoining Defendant from imposing penalties under N.Y. Tax Law § 481(1)(b)(i) on the ground that collection of the penalties from Plaintiffs Zaid Abuzaid and Arref H. Kassem would violate the Double Jeopardy Clause of the Fifth Amendment.  The Court of Appeals (Leval, *J.*) concludes that the comity doctrine prohibits the district court from granting injunctive and declaratory relief to Plaintiffs, but that comity does not prohibit a federal court from denying relief on the merits because such a judgment does not interfere with state tax administration.  Because the Court of Appeals finds that § 481(1)(b)(i) is a civil penalty rather than a criminal punishment and therefore does not implicate the Double Jeopardy Clause, the judgment of the district court is **REVERSED** and the case is **REMANDED** with instructions to dismiss the action with prejudice.

THOMAS MARCELLE, Albany, New York (Philip J. Vecchio, East Greenbush, New York, *on the brief*) for *Plaintiffs-Appellees-Cross-Appellants*.

KATE H. NEPVEU, Assistant Solicitor General of the State of New York (Andrew D. Bing, Deputy Solicitor General, Barbara D. Underwood, Solicitor General, and Andrew M. Cuomo, Attorney General of the State of New York, *on the brief*), Albany, New York, for *Defendant-Appellant-Cross-Appellee*.

LEVAL, *Circuit Judge*:

This appeal raises questions of the scope of the comity doctrine, which generally forbids federal courts from interfering with a state's enforcement of its tax laws and its criminal laws, and of whether a penalty imposed under New York's tax code is civil or criminal for purposes of the Double Jeopardy Clause of the Fifth Amendment.  Defendant

the Commissioner of the New York State Department of Taxation and Finance (the "Commissioner" or the "Department") appeals from a permanent injunction issued by the United States District Court for the Northern District of New York (Kahn, *J.*). The injunction forbids the Department from imposing penalties on Plaintiffs Zaid Abuzaid and Arref H. Kassem[1] pursuant to N.Y. Tax Law § 481(1)(b)(i). The penalty in question arises by reason of the Plaintiffs' violations of a New York law that taxes the sale of cigarettes and provides for the issuance of tax stamps evidencing payment of the required taxes.

Plaintiffs were prosecuted, convicted, and sentenced under criminal provisions of the New York tax law for their violations. Thereafter, under § 481(1)(b)(i), the Commissioner assessed the separate tax penalties at issue in this case. Plaintiffs brought this action seeking an injunction to bar the Department from collecting the § 481(1)(b)(i) penalties. Their suit contends that the imposition of the penalties would constitute a second punishment for their crimes and is thus prohibited by the Double Jeopardy Clause.

[1] In the action below, Zaid Abuzaid and Arref Kassem had two co-plaintiffs, Adel Abuzaid and Mohamed Mohamed. The district court granted summary judgment against Adel Abuzaid because it found that it was compelled to abstain under *Younger v. Harris*, 401 U.S. 37 (1971). *See Abuzaid v. Woodward*, No. 1:08-CV-1213, 2010 WL 653307, at *4 (N.D.N.Y. Feb. 19, 2010). The court granted summary judgment against Mohamed Mohamed on the ground of mootness. *See id.* at *5-6. Although Plaintiffs' brief purports to include Adel Abuzaid and Mohamed Mohamed in this appeal, the brief does not make any argument as to why we should reverse the district court's decisions on *Younger* abstention and mootness, respectively. Because Adel Abuzaid and Mohamed Mohamed did not effectively appeal from the judgments against them, any arguments on those issues are now waived. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

3

The district court agreed and enjoined the imposition of the penalties. The Commissioner appealed.

We reverse the judgment. The district court was barred by the comity doctrine from granting injunctive and declaratory relief to Plaintiffs because such relief would interfere with the state's administration of its tax laws. Moreover, the district court erred in finding that § 481(1)(b)(i) constitutes a criminal penalty. We conclude instead that § 481(1)(b)(i) provides for a civil penalty and that Plaintiffs therefore did not suffer double jeopardy when the Department imposed the penalties on them. In view of our conclusion that Plaintiffs' claim is without merit, we dispose of this case by instructing the district court on remand to dismiss the suit with prejudice. The entry of such a ruling is not barred by comity because the dismissal with prejudice of an action challenging a state tax law in no way interferes with or disrupts the state's administration of its tax laws.

**BACKGROUND**

Plaintiffs Abuzaid and Kassem owned small newsstands, which sold cigarettes. The state of New York charges a cigarette tax of $15 per ten-pack carton of cigarettes. To collect the tax, the state sells Sales Tax Stamps to stamping agents who affix the stamps to the cigarettes and sell the stamped cartons to retailers such as Plaintiffs. *See* N.Y. Tax Law § 471. In a "sting" operation that spanned from May 2004 to August 2005, undercover agents from the Department sold 2,505 cartons of cigarettes bearing

4

counterfeit stamps to Abuzaid, and 720 cartons with counterfeit stamps to Kassem.

Abuzaid and Kassem, among others, were arrested and charged under N.Y. Tax Law § 1814, which makes it a felony to "willfully attempt[] in any manner to evade or defeat the [cigarette] taxes" and to "willfully possess[ ] . . . for the purpose of sale" unlawfully stamped cigarettes. N.Y. Tax Law §§ 1814(a), (c). In May 2006, Abuzaid and Kassem separately pled guilty to violating N.Y. Tax Law § 1814(e)(2), a Class D felony.[2] Abuzaid received a sentence of probation not to exceed five years, and he agreed to forfeit certain assets that had been seized by the Department. Kassem was sentenced to a conditional discharge not to exceed three years, and he also agreed to forfeit certain assets seized by the Department. Neither Abuzaid nor Kassem contest their guilt or challenge their plea agreements.

In November 2006, pursuant to N.Y. Tax Law § 481(1)(b)(i), the Department sent Abuzaid a "Notice of Determination" informing him that he was being assessed a penalty of $267,300 for possessing the unlawfully stamped cigarettes sold by the undercover agents during the "sting" operation. In the same month, Kassem received a similar notice

---

[2] N.Y. Tax Law § 1814(e)(2) has since been redesignated as § 1814(c)(2). This section provides, "Any person, other than an agent licensed by the commissioner, who willfully possesses or transports for the purpose of sale thirty thousand or more cigarettes subject to the tax imposed by section four hundred seventy-one of this chapter in any unstamped or unlawfully stamped packages or who willfully sells or offers for sale thirty thousand or more cigarettes in any unstamped or unlawfully stamped packages in violation of article twenty of this chapter shall be guilty of a class D felony." N.Y. Tax Law § 1814(c)(2).

informing him that he would be assessed a penalty of $108,000. Section 481(1)(b)(i) provides, in relevant part, that "the commissioner may . . . impose a penalty of not more than one hundred fifty dollars for each two hundred cigarettes, or fraction thereof, in excess of one thousand cigarettes in unstamped or unlawfully stamped packages in the possession or under the control of any person . . . ."

On November 10, 2008, Plaintiffs brought this action in the United States District Court for the Northern District of New York to block the Department from collecting the penalty. They asserted that the § 481(1)(b)(i) penalties were punitive in nature and would thus amount to an unconstitutional second criminal punishment for the same wrongful conduct. The Department responded that § 481(1)(b)(i) provides for a civil penalty, which does not implicate the Double Jeopardy Clause. The Department also argued that the district court was prohibited from entertaining Plaintiffs' claim by the Tax Injunction Act ("TIA"), codified at 26 U.S.C. § 1341, and the comity doctrine.

As an initial matter, the district court found that the TIA, which prohibits a federal district court from interfering with the assessment or collection of state taxes when the state provides an adequate remedy, *see* 28 U.S.C. § 1341, does not apply to this case because § 481(1)(b)(i) is a penalty rather than a tax. *See Abuzaid*, 2010 WL 653307, at *6. The court did not address the issue of comity as a bar to granting relief to Plaintiffs. Turning to the merits of Plaintiffs' claim, the court concluded that § 481(1)(b)(i) is

punitive under the multi-factor balancing test outlined in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963).  The court explained that, although the New York legislature did not intend that § 481(1)(b)(i) operate as a criminal sanction, the law is effectively a criminal punishment because it is meant to punish and deter criminal conduct, it covers conduct that is already a crime, and it requires *scienter* for the imposition of more severe penalties.  *See Abuzaid*, 2010 WL 653307, at \*7-9.  Since Plaintiffs had already been subjected to a criminal prosecution for the same conduct, the court declared that the imposition of § 481(1)(b)(i) penalties against Plaintiffs would violate the Double Jeopardy Clause of the Fifth Amendment, and it enjoined the Commissioner from imposing any such penalties against Plaintiffs.  *See id.* at \*9.

The Commissioner brought this appeal.

**DISCUSSION**

We review *de novo* the district court's grant of summary judgment.  *See 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011).  To justify summary judgment, the moving party must show entitlement to judgment as a matter of law and the absence of any genuine dispute of material fact.  *See* Fed. R. Civ. P. 56(a).

The Department contends that both the TIA and comity barred the district court from granting declaratory and injunctive relief to Plaintiffs on their challenge to N.Y. Tax

7

Law § 481(1)(b)(i).  As to the comity principle, we agree.  This doctrine prohibits the federal courts from granting relief that would interfere with the state's administration of its tax laws.[3]  Moreover, we believe that § 481(1)(b)(i) provides a civil penalty—not a criminal punishment—and that the district court's conclusion to the contrary was error.  Because a dismissal of this action with prejudice would not interfere with the state's administration of its tax laws, comity does not prohibit us from denying Plaintiffs' claim on the merits.  Accordingly, we reverse the district court's judgment and remand with instructions to dismiss the action with prejudice.

## I.  Comity Barred the District Court from Granting Relief

The comity doctrine instructs federal courts to refrain from granting relief to taxpayer-plaintiffs in suits that contest taxpayer liability in a manner that interferes with a state's administration of its tax system.  *See Levin*, 130 S. Ct. at 2328.  Comity demonstrates "a proper respect for state functions" and "a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways."  *Id.* at 2330 (internal quotation marks omitted).  The Supreme Court has stressed that "[c]omity's constraint has particular force

---

[3] Because we conclude that comity barred the district court from enjoining New York's imposition of penalties under § 481(1)(b)(i), we have no need to rule on whether the district court's order similarly contravened the TIA, which we have viewed as having a narrower scope than the comity-based prohibitions.  *See Levin v. Commerce Energy, Inc.*, 130 S. Ct. 2323, 2332 (2010) ("the comity doctrine is more embracive than the TIA").

when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity" because states rely on tax revenues to run their governments. *Id.* Therefore, the Court has ruled that the comity doctrine prohibits federal courts from granting declaratory or injunctive relief against state taxing authorities in favor of taxpayer-plaintiffs, *see Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 107, 115-16 (1981); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299 (1943), and from awarding damages personally against the taxing officials in suits contesting the constitutionality of state taxes brought under 42 U.S.C. § 1983, *see Fair Assessment*, 454 U.S. at 116, so long as the plaintiffs have access to state remedies that are "plain, adequate, and complete, and may ultimately seek review of the state decisions in [the Supreme] Court," *id.* (footnote omitted).

Under these comity principles, the district court erred in granting declaratory and injunctive relief to Plaintiffs.[4] The relief granted by the district court's judgment undoubtedly disrupted and interfered with the state's administration of its tax system. *See Levin*, 130 S. Ct. at 2328. Regardless of whether assessments made under N.Y. Tax Law § 481(1)(b)(i) might be regarded as penalties imposed under the state's tax laws designed to encourage payment of taxes, rather than as taxes, they are indisputably part of the

---

[4] Plaintiffs also brought claims under the Eighth and Fourteenth Amendments, which the district court did not reach. We do not address the validity of those claims beyond noting that the comity doctrine would similarly bar federal courts from granting the relief sought.

9

state's tax system. Plaintiffs have made no demonstration that they did not have access to state remedies for their constitutional objections that are "plain, adequate, and complete" and that include the right to seek review of the state decisions in the Supreme Court. *Fair Assessment*, 454 U.S. at 116. The Supreme Court has previously determined in other litigation related to the TIA that New York does provide "plain, speedy and efficient" forums for individuals to bring constitutional challenges to its tax laws. *See Tully v. Griffin, Inc.*, 429 U.S. 68, 76-77 (1976). Because the Court has "discern[ed] no significant difference" between remedies that are "plain, adequate, and complete" (as that phrase has been used in articulating the doctrine of equitable restraint), and those that are "plain, speedy and efficient" (within the meaning of the TIA), Plaintiffs had recourse to a "plain, adequate, and complete" remedy in a New York state forum. *Fair Assessment*, 454 U.S. at 116 n.8.

Plaintiffs assert that neither the TIA nor comity bar the injunctive and declaratory relief granted by the district court because § 481(1)(b)(i) is a criminal penalty rather than a tax provision. The district court adopted this reasoning in declining to apply the TIA. *See Abuzaid*, 2010 WL 653307, at *6.[5] However, we find this argument to be without merit. Even if we viewed § 481(1)(b)(i) as a criminal penalty, and not as part of the state's tax system, its administration would be similarly protected from federal court

[5] The district court did not explain why comity did not deprive it of jurisdiction to grant injunctive and declaratory relief to Plaintiffs.

10

interference by another branch of the comity doctrine. It is well established by Supreme Court authority that comity bars federal courts from restraining state criminal prosecutions absent a showing of bad faith, harassment, or other extraordinary circumstance. *See Younger*, 401 U.S. at 43-44, 53. We have ruled that abstention under *Younger* is mandatory when: "(1) there is a pending state proceeding, (2) that [proceeding] implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003). These conditions were all present when Plaintiffs sought federal court intervention to bar the state from imposing the § 481(1)(b)(i) penalties. State proceedings were pending against them, as evidenced by the "Notices of Determination" assessing the § 481(1)(b)(i) penalties; the proceedings implicated the important state interest of collecting penalties resulting from Plaintiffs' abuse of the state scheme for the taxation of cigarettes; and Plaintiffs had ample opportunity in the state courts to obtain review of their constitutional objections, with the further opportunity to seek review of an adverse decision in the Supreme Court. Moreover, Plaintiffs do not allege bad faith or harassment on the part of the Department.

Therefore, comity prohibited the district court's ruling regardless of whether the state's imposition of the penalty under § 481(1)(b)(i) is deemed a tax or a criminal punishment.

**II. Double Jeopardy**

Crucial to Plaintiffs' contention that the Double Jeopardy Clause bars imposition of the § 481(1)(b)(i) penalties is their assertion that the penalty is a criminal punishment. Double jeopardy arises when a defendant is prosecuted or punished more than once for a crime. *See Dep't of Revenue v. Kurth Ranch*, 511 U.S. 767, 769 n.1 (1994) ("The Double Jeopardy Clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense."). If the penalty imposed by § 481(1)(b)(i) is a civil penalty, and not a criminal punishment, Plaintiffs' claim of double jeopardy fails. *See Hudson v. United States*, 522 U.S. 93, 98-99 (1997); *Helvering v. Mitchell*, 303 U.S. 391, 398-99 (1938). Notwithstanding that they may have a punitive aspect, not all penalties are criminal punishments that fall under the protections of the Double Jeopardy Clause. In *Mendoza-Martinez*, 372 U.S. at 168-69, the Supreme Court established the framework for determining whether a penalty provision is deemed civil or criminal for double jeopardy purposes. We first look to whether the legislature, in establishing the penalty, intended it as a punishment. *See id.* at 169. We then consider an array of other factors to

12

evaluate whether in practice the provision effectively imposes a criminal penalty.  *See id.* at 168-69.

### A.  *Legislative intent*

While recognizing that labels applied by the legislature are not necessarily determinative, we find that the language and structure of § 481 strongly suggest a legislative intent to establish a civil, rather than a criminal, penalty.  As an initial matter, § 481 states that the criminal penalties for the misconduct addressed in that section are to be found in other parts of the tax code.  *See* N.Y. Tax Law § 481(4) ("For criminal penalties, see article thirty-seven of this chapter.").  Furthermore, the penalties imposed under § 481(1)(b)(i) are assessed and reviewed through an administrative process that could potentially involve the Commissioner, an administrative law judge, the tax appeals tribunal, and the state courts.  *See* N.Y. Tax Law § 481(1)(b)(iii) (providing for penalty determination and review through the administrative process outlined in N.Y. Tax Law § 478); *id.* § 478 (describing the administrative process for a tax determination).  If the legislature had intended the punishment to be criminal, it would most likely have established a criminal enforcement process administered directly in the courts.  *See Hudson*, 522 U.S. at 103 (explaining that the conferral of the authority to issue debarment orders "upon administrative agencies is prima facie evidence that Congress intended to provide for a civil sanction" rather than a criminal punishment).

Plaintiffs argue that the text of § 481 supports their position that the § 481(1)(b)(i) penalty was intended by the legislature to be criminal. They point out that, while § 481(1)(c) and § 481(1)(d), which provide other related penalties, both state that "the commissioner may impose a *civil* penalty," N.Y. Tax Law § 481(1)(c)-(d) (emphasis added), § 481(1)(b)(i) states only that "the commissioner may . . . impose a penalty," without including the word "civil." Plaintiffs contend that the omission of the word "civil" indicates that the legislature considered the § 481(1)(b)(i) penalty to be criminal. This argument might have more force if the statute exhibited care to employ the adjective "civil" each time its reference was to a civil penalty, and to omit it in all references to criminal penalties. Section 481, however, makes numerous references to penalties without specifying whether they are civil or criminal. Plaintiffs would likely respond that each reference to a penalty, in the singular, without specification of civil or criminal refers to a criminal penalty, and that references to penalties in the plural without specification include both civil and criminal penalties. Such an interpretation is not obviously wrong on its face, but it is speculative at best and is far less persuasive in view of the assertion in § 481(4) that criminal penalties are listed in another chapter of the tax code and the establishment by § 481(1)(b)(iii) of an administrative procedure for determining and reviewing penalties.

14

### *B. Practical effect*

*Mendoza-Martinez* instructs that we next consider a number of factors, which may help to determine whether in practice the particular provision functions as a criminal punishment. 372 U.S. at 168-69. The opinion directs that we consider:

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment–retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . .

*Id.* (citations and footnotes omitted). None of these individual factors is controlling. *See id.* at 169.

The balance of the *Mendoza-Martinez* factors supports categorizing § 481(1)(b)(i) as a civil penalty. Under no circumstances does the penalty authorize imposition of an affirmative restraint. Plaintiffs point to no indications that the penalty has historically been viewed as a criminal punishment. Nor does imposition of the penalty depend on a finding of *scienter.*[6]

---

[6] The district court was mistaken in its assertion that the penalty is dependent on the offender's mental state. *See Abuzaid*, 2010 WL 653307, at *7-8. Section 481(1)(b)(i) provides that "the commissioner may . . . impose a penalty of not more than one hundred fifty dollars for each two hundred cigarettes . . . in excess of one thousand cigarettes in unstamped or unlawfully stamped packages in the possession or under the control of any person . . . ." The section includes no element of state of mind. In contrast, § 481(1)(b)(ii), which outlines the penalties that can be imposed *in lieu* of those authorized by § 481(1)(b)(i), does require a finding of *scienter. See, e.g.*, N.Y. Tax Law § 481(1)(b)(ii)(A)(I)(1) (specifying the penalty for a certain

15

Some of the factors prescribed by *Mendoza-Martinez* are neutral. While the penalty undeniably has a punitive and deterrent effect (as does any penalty), its imposition also furthers the non-punitive state objective of raising revenue for health care in New York. The legislative history confirms that this was considered a significant reason to pass the statute. *See* 2000 N.Y. Sess. Laws 1704 (McKinney) ("PURPOSE: . . . [The increased civil and criminal penalties] will ensure funding for health care as enacted by the Health Care Reform Act of 2000."); *id.* at 1707 (noting that the law would impact mail order and Internet sales of cigarettes, which were often made without paying state taxes meant "to fund the health care of New Yorkers"); *see also id.* at 1708 ("This proposal is necessary to maintain the revenue estimate for cigarettes contained in the State FY 2000-2001 Executive Budget."). Furthermore, the penalty serves the additional non-punitive state objective of partially reimbursing the state for the cost of the investigation. *See Helvering*, 303 U.S. at 401. Plaintiffs' contention that a $150 penalty for evasion of $15 in taxes is excessive and therefore indicative of a punitive purpose is not convincing when considered in the context of reimbursing the state for the costly process of investigating.

---

number of cigarettes "in unstamped or unlawfully stamped packages *knowingly in the possession or knowingly under the control* of any person" (emphasis added)). However, § 481(1)(b)(ii) is not at issue in this case.

16

Finally, while it is true that the penalty imposed by § 481(1)(b)(i) applies to conduct designated as a misdemeanor under § 1814(b) and as a felony under § 1814(c), which lends some support to the argument that it is a criminal penalty, the penalty applies also to violations of a civil tax obligation—the requirement under § 471(1) that tax stamps be affixed "on all cigarettes possessed in the state by any person for sale." *See* N.Y. Tax Law § 481(1)(b)(i) ("[T]he commissioner may . . . impose a penalty of not more than one hundred fifty dollars for each two hundred cigarettes . . . in excess of one thousand cigarettes in *unstamped* . . . packages in the possession or under the control of any person . . . ." (emphasis added)). The penalty therefore applies to behavior that violates both a civil obligation and a criminal statute. And, insofar as it applies to criminal conduct, the criminal punishments applicable upon conviction for such a crime are specified elsewhere in the laws of New York. *See, e.g.*, N.Y. Penal Law § 70.00(2) (sentences of imprisonment for a felony); *id.* § 80.00 (fines for a felony).

Upon consideration of the factors highlighted by the Supreme Court in *Mendoza-Martinez* for determining whether a penalty imposed by law should be deemed to constitute a criminal punishment precluding another criminal punishment for the same conduct, we are persuaded that the penalty imposed by § 481(1)(b)(i) is civil, and not criminal. It therefore has no significance to the double jeopardy rights of an individual on

17

whom it is imposed.[7] Accordingly, we find no merit in Plaintiffs' contention that the Double Jeopardy Clause protects them from imposition of a tax penalty under § 481(1)(b)(i).

**III. Comity as Applied to the Disposition of this Appeal**

Having come to the conclusion that comity prohibited the district court from granting relief to Plaintiffs in a manner that would interfere with New York's administration of its laws, and that the district court erred in concluding that double jeopardy barred the imposition of the § 481(1)(b)(i) penalties, we face the further question how to dispose of this appeal. The available options are either to dismiss Plaintiffs' suit on the merits with prejudice, because we find it to be without merit, or, in the interest of comity, to decline to adjudicate the suit and dismiss it without prejudice, leaving Plaintiffs free to reassert their meritless double jeopardy claims in an appropriate New York state forum.

In our view, dismissing on the merits, and thus terminating a meritless litigation, is clearly the preferable option if this is permitted by the comity doctrine. That is the question we explore. We recognize that there is language in Supreme Court opinions that

---

[7] Plaintiffs argue that, because they have been prosecuted, convicted, and subjected to criminal punishment for their possession of cigarettes with counterfeit tax stamps, they may not be punished a second time by the imposition of a tax penalty. We note that, if their argument is valid, it would follow that one on whom the tax penalty had first been imposed by the taxing authorities would be similarly immunized by the Double Jeopardy Clause from criminal prosecution. Such an interpretation of the penalty statute seems to us highly improbable.

18

could be understood to mean that comity is violated whenever a federal court entertains such a suit. For example, in *Levin*, in explaining that the comity rules are broader than the TIA, which is violated only by orders that restrain the assessment, levy, or collection of taxes, the Court stated that comity "restrains federal courts from *entertaining* claims for relief that risk disrupting state tax administration." 130 S. Ct. at 2328 (emphasis added).

Notwithstanding this language, several considerations lead us to conclude that, at least in the circumstances we face, comity does not bar us from dismissing Plaintiffs' meritless suit on the merits with prejudice. First, the Supreme Court has neither held that such a ruling was incompatible with comity, nor has it ever even considered the question—so far as we are aware. Consideration of the above-cited language in context suggests rather that, where a particular federal court ruling would not interfere with the state's administration of its laws, the ruling is not prohibited by the comity doctrine. Second, this view has been endorsed by Congress. In passing statutes designed to implement comity by barring federal courts from interfering with states' administration of their laws, Congress has, as explained below, expressly allowed a federal court to dismiss on the merits a suit for which comity would forbid a ruling in the plaintiff's favor. Furthermore, in *Fair Assessment*, the Court described the comity doctrine as barring taxpayers from "*asserting* § 1983 actions against the validity of state tax systems in

19

federal courts," 454 U.S. at 116 (emphasis added), a formulation aimed against plaintiffs, which does not on its face suggest that a federal court in which an inappropriate suit is lodged is barred from dismissing it on the merits. Finally, at least in the circumstances of this case, our entry of a judgment on the merits in the Defendant's favor would not contravene the objectives of the comity doctrine because it would not interfere with the state's administration of its laws; to the contrary, such a judgment would relieve the state of the need to deal with a further suit contesting the constitutionality of the state's actions.

The sentence from *Levin* quoted above, which could be understood to bar federal courts from any and all exercise of jurisdiction over a suit that seeks to interfere with a state's administration of its tax laws, must be read in the context of the respective case and the broader case law. The Supreme Court has repeatedly emphasized that the purpose of the comity doctrine is to prevent federal courts from issuing decisions that "interfere" with the states' administration of their tax systems. *See, e.g.*, *Levin*, 130 S. Ct. at 2335 (rejecting a suggested form of relief because it would require a federal court to "engage in the very interference in state taxation the comity doctrine aims to avoid"); *id.* at 2336 ("Comity, in sum, serves to ensure that 'the National Government . . . will not unduly interfere with the legitimate activities of the States.'" (quoting *Younger*, 401 U.S. at 44)); *Fair Assessment*, 454 U.S. at 115-16 (noting that § 1983 actions would create "interference . . . contrary to the scrupulous regard for the rightful independence of state

20

governments which should at all times actuate the federal courts") (internal quotation marks and alterations omitted)); *Great Lakes Dredge & Dock*, 319 U.S. at 298 (endorsing "a proper reluctance [among federal courts] to interfere by injunction with [the states'] fiscal operations"). The Supreme Court has interpreted comity to bar federal courts from granting declaratory judgments, injunctive relief, and money damages in state tax cases because such relief would necessarily interfere with state tax administration. *See Fair Assessment*, 454 U.S. at 107, 115-16.

While "interference" is a broad concept that covers a wide range of results, including the grant of injunctive and declaratory relief for plaintiffs (and perhaps also the conduct of proceedings in which state authorities are compelled to justify their conduct before federal judges), there are dispositions on the merits that do have any adverse effect on a state's administration of its laws. A federal court's dismissal with prejudice of a meritless suit attacking a state tax law as unconstitutional does not interfere with that state's ability to enforce that law or collect the tax. Therefore, we believe that, under the comity doctrine, a federal court may enter a judgment on the merits in an action seeking to disrupt the administration of a state law as long as the judgment does not interfere with the state's administration of the law. We find it telling that the Supreme Court has never overturned a federal court judgment *rejecting* a plaintiff's effort to interfere with the state's administration of its laws on the ground that the comity doctrine represents a

21

federal jurisdictional bar to the consideration of any such suit.  If on the particular facts a federal district court is prepared at an early stage of the proceedings to enter a judgment rejecting the plaintiff's claim on the merits, without interfering in the state's administration of its laws, we see no reason either for the court to refrain from doing so in the supposed interest of comity, or to interpret the Supreme Court's words as requiring such refrainment.

The evolution of habeas corpus jurisprudence supports this view.  Prior to the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), the statute then governing federal habeas corpus review of state court convictions mandated comity by prohibiting federal courts from *granting* habeas corpus if the petitioner had not "exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b) (1966).  In *Rose v. Lundy*, the Supreme Court interpreted this provision as prohibiting the grant of habeas on an exhausted claim if the petitioner also included an unexhausted claim, on the theory that, so long as there were unexhausted claims, the state still had the opportunity, at least in theory, to correct its own error before the federal court overturned the state conviction.  455 U.S. 509, 518-19 (1982).  The Supreme Court's ruling went still further, ruling that district courts could not even *consider* "mixed" habeas petitions which contained both exhausted and unexhausted claims.  *Id.* at 522.

Congress, however, eventually recognized that comity did not justify prohibiting a federal court from dismissing a meritless claim on the merits. An immediate dismissal of such a petition on the merits, rejecting the contention that the state had violated federal law, rather than requiring the claim to be brought first to state courts, would involve no affront to the state's sovereignty. (Furthermore, to the extent it prohibited federal courts from dismissing meritless challenges on the merits, *Rose* had burdened the state courts unnecessarily with countless meritless challenges to state court convictions that could have been simply terminated by the federal court.). In passing AEDPA, Congress accordingly modified *Rose*'s total exhaustion rule. Under the amended statute, § 2254(b)(1)(A) prohibits federal courts from *granting* relief to an applicant who has not "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A) (1996). But § 2254(b)(2) authorized federal courts to deny the petition, regardless of whether the applicant exhausted his state court remedies. ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").[8]

_____

[8] We are aware that some circuits have interpreted Supreme Court dictum in *Granberry v. Greer*, 481 U.S. 129 (1987), to allow denial of an unexhausted application for habeas corpus pursuant to § 2254(b)(2) only when it is "perfectly clear" that there is not "even a colorable federal claim." *See, e.g.*, *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005). For three reasons, we disagree. We do not interpret *Granberry* to limit a federal court's discretion in this manner, nor to preclude the decision we reach here.

First, the question confronted by the Court in *Granberry* is so different from the question before us in this appeal that *Granberry* is of dubious applicability. In *Granberry*, the question

23

We think the requirement of comity should apply in an analogous manner to federal court challenges brought against a state's administration of its tax laws. Comity bars federal courts from granting relief that interferes with state tax administration. But denial of a challenge to a state tax ruling does not interfere with the state's administration of its tax laws, and respect for state courts and state tax systems does not require federal courts to refrain from dismissing meritless challenges on the merits.[9]

was whether, in a federal habeas corpus proceeding attacking a state criminal conviction, a state's failure to raise the petitioner's failure to exhaust should constitute a waiver or forfeiture by the state of the exhaustion requirement. The Court recognized that answering that question in the affirmative could open the door to federal courts overturning state criminal convictions on unexhausted petitions, notwithstanding that the state's failure to raise nonexhaustion was attributable to mere inadvertence. On the other hand, answering the question in the negative might permit state authorities to litigate manipulatively, first advocating denial on the merits and raising failure to exhaust only if and when the case began to go badly. The Court's compromised resolution represented an effort to balance these problematic considerations, which have no bearing on the question in this case.

Second, nothing in the language quoted from *Granberry* supports the proposition that comity is somehow intrinsically affronted by a federal court rejecting on the merits a challenge to a state's application of its laws. To the contrary, the *Granberry* Court calls on federal courts to exercise their judgment in "determin[ing] whether the interests of comity . . . will be better served by addressing the merits forthwith or by requiring a series of additional state and district court proceedings before reviewing the merits of the petitioner's claim." 481 U.S. at 134. As discussed at length in the body of this opinion, in the instant case the interests of comity are best served by not forcing the state to further entertain a meritless challenge to the application of its laws.

And, finally, *Granberry* was heard in 1987, while the Court was still operating under the exaggerated *Rose* precedent, nearly a decade before Congress rejected *Rose*'s overstated view of comity by explicitly allowing denial of an unexhausted habeas petition on the merits while forbidding grant of the petition.

[9] We recognize that a federal court might interfere with the state's administration of its tax laws by requiring state officials to attend at length in federal court to defend their position. In such circumstances, comity may require dismissal without prejudice (absent consent of the state officials) before the federal court reaches a decision or proceeds with litigation likely to be

Because we find that Plaintiffs' constitutional claim is without merit, we see no reason to burden the state authorities and the state court system by prolonging this litigation in state court. We instruct the district court to dismiss Plaintiffs' suit with prejudice.

## CONCLUSION

We reverse the judgment of the district court, and we remand with instructions to dismiss Plaintiffs' complaint with prejudice.

---

protracted. We express no view on that issue, as we do not face that question. Our ruling overturning the district court's injunction and dismissing the complaint on the merits will not require further attendance by state taxing authorities in federal court. Indeed, our disposition is particularly appropriate in this case after the district court, overlooking the comity barrier, has already adjudicated the lawsuit and our reversal on the merits presents an opportunity to end the litigation.